STATE OF IOWA, Appellee, v. JOHN FADOR, Appellant.

No. 42908.

JULY 31, 1936.

REHEARING DENIED NOVEMBER 27, 1936.

P. C. Rasmussen, Robertson & Wolfe, and Wallace W. Robertson, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, First Asst. Attorney General, and William M. Tatum, County Attorney, for appellee.

DONEGAN, J.—On the 17th day of October, 1934, James Hicks was a night watchman for the Chicago and Northwestern Railway Company at Missouri Valley, Iowa. Sometime shortly after nine o'clock on the evening of that day, while making his round in the railroad yards, he was accosted by a man who threatened him with a revolver and told him to move on. Hicks thereupon left the railroad yards and reported this occurrence to officer Kirlin, a night policeman. Kirlin, in company with one Clary, also a night policeman, proceeded toward the railroad yards. After making some investigation, Kirlin and Clary saw two strange men standing along the south side of a building just north of the railroad yards and, as they approached these men, the men proceeded eastward toward Fifth street in the city of Missouri Valley. The officers then separated, Clary following the two strange men and Kirlin proceeding northward through an alley which ran north and south parallel with Fifth street about 310 feet west thereof. The two strange men proceeded eastward to Fifth street, then one block north to Erie street, and then westward on the sidewalk along the south side of Erie street, Clary following a short distance behind them. In the meantime, Kirlin proceeded northward through the alley and, as he came out at the south side of Erie street, he saw the two strange men coming westward toward him on the sidewalk. Kirlin proceeded eastward on this sidewalk until he had met and passed about one step beyond these two men. He then turned, drew his gun, addressed the men, told them that he was an officer, and told them to stick up their hands, that he wanted to look them over, about the same time taking hold of the arm of the smaller of the two men. The larger of the two men immediately drew a gun, reached around the other man, who was standing between him and Kirlin, and shot Kirlin, the bullet going through the chest wall and lodging in his right arm. This man then hit Kirlin with his gun and knocked him down, and the revolver which Kirlin had in his hand dropped to the sidewalk. While

Kirlin was down on the sidewalk, the smaller of the two men, who the state claims is the defendant in this case, drew a gun and began shooting at him. About this time Clary, who had been following the two men, drew his gun and began to take part in the shooting. Several shots were fired by the two men whom Kirlin had accosted, some of them going through Clary's clothing, one of them striking the calf of his leg, and some of them striking a man and a woman who were some distance east on the sidewalk. None of the shots, however, produced fatal results. The two strange men then proceeded westward to the alley, southward into the alley, and disappeared. Kirlin and Clary, after having their wounds treated, were taken to a hospital at Council Bluffs. On the following Sunday morning, October 21, 1934, the railroad watchman, Hicks, was taken to the police station at Council Bluffs, where he identified the defendant as the man who had threatened him with a revolver in the railroad yards. Later in the same day, the defendant was taken to the hospital where Kirlin and Clary were patients and was recognized by both of them as one of the two men who had shot at them in Missouri Valley. Shortly thereafter, the defendant was indicted on the charge of assault with intent to commit murder. On the trial of the case he was found guilty of assault with intent to do great bodily injury, and has appealed to this court.

■■■ I. The first alleged error upon which the plaintiff relies for reversal is that the evidence was not sufficient to sustain the verdict returned by the jury. Upon the trial of the case the railroad watchman, Hicks, recognized the defendant as the man who had threatened him with a revolver in the railroad yards on the evening of October 17th. The two policemen, Kirlin and Clary, both recognized the defendant as one of the two men who shot at them on the south side of Erie street the same evening. The defendant offered evidence in support of an alibi, and several witnesses testified to his presence in the city of Council Bluffs at various times between 8:30 and 10:30 o'clock on the evening that the shooting occurred in Missouri Valley. The witnesses for the state testified as to the condition as to light, their nearness to defendant and their observation of him, and were positive in their identification. It is contended by the defendant that the circumstances attending the meeting of Hicks with the man in the railroad yards and the circumstances attending the observation of the two men by the officers, Kirlin and Clary,

near the railroad yards, and what followed until the shooting was over, were such that little or no reliance can be placed upon their identification of the defendant; that the weight of the testimony is in favor of the defendant's claim that he was not one of the two men involved in the shooting; and that the court should say, as a matter of law, that the evidence was not sufficient to sustain the conviction of the defendant beyond all reasonable doubt. We are unable to take the view of this matter for which the appellant contends. While there was a clear conflict between testimony of the witnesses for the state and those for the defendant, the evidence is not such that we could say, as a matter of law, that the greater weight was with the defendant. We think the evidence is abundantly sufficient to sustain the verdict rendered. The cases cited by the defendant in support of his contention are entirely different in their facts from the case. at bar.

■■■ II. Defendant complains of instructions given by the court and of the refusal of the court to give instructions requested by him, in regard to the right of the policeman, Kirlin, to arrest the two men whom he met on the south side of Erie street, in regard to the things said to these two men by Kirlin being insufficient to comply with the statutory requirements of a valid arrest, and in regard to the right of the persons thus attempted to be arrested to defend themselves from the officer. It is undisputed in the evidence that the railroad watchman, Hicks, had been assaulted by someone, that Kirlin and Clary were searching for the person who committed this assault, that the two men were strangers and were seen in the vicinity of the assault shortly after it occurred. There is evidence tending to show that, as the two men proceeded westward along the sidewalk on the south side of Erie street, they were walking rapidly and that, when the policeman, Kirlin, emerged from the alley and proceeded eastward on the sidewalk, he had reached a point approximately 25 feet east of the alley when he met them. The testimony of Kirlin is: "Well, I took one step past these fellows, and told them who I was, and told them to put up their hands"; I said, "I am an officer, boys, put up your hands and I will look you over." Kirlin further testified that as they turned around the smaller man, who the state claims is the defendant in this case, was between the other man and Kirlin; that the short man put up his hands, but that the tall man reached around the

short man and shot Kirlin through the chest. It is undisputed in the evidence that neither of the police officers was in uniform, and that nothing further was said by Kirlin to the two men than is contained in his testimony as above set forth.

It is contended by the appellant that, under the evidence, the officers did not make or attempt to make an arrest, that what Kirlin did was an assault upon the two men, and that these two men had a right to defend themselves from the assault thus made upon them. In support of this contention. appellant cites State v. Small, 184 Iowa 882, 169 N. W. 116; State v. Phillips, 118 Iowa 660, 683, 92 N. W. 876, 884; Snyder v. Thompson, 134 Iowa 725, 112 N. W. 239.

In the Small case, the defendant was tried and convicted of having resisted an officer who was attempting to arrest him for an alleged public offense committed in the officer's presence. The case was reversed by this court on the ground that the things done by the defendant, and for which the officer was attempting to arrest him, did not constitute a public offense. In the Snyder case, which was a civil action for false imprisonment, a verdict for the defendants was set aside by the trial court, and it was from the trial court's ruling setting aside such verdict that the appeal was taken to this court. The court had instructed the jury that the burden was on the plaintiff to show that he was not found intoxicated at the time of his arrest, nor immediately preceding the same on that day, and error based upon this instruction was one of the grounds for the trial court setting aside the verdict. This court affirmed the trial court's action in setting aside the verdict on the ground that the instruction was erroneous. Quite apparently, neither of these cases goes to the proposition for which appellant here contends.

In the case of State v. Phillips, however, the facts attending the alleged arrest were somewhat similar to those in the case at bar. A town marshal, upon receipt of information as to a robbery in a neighboring town, and a description of the persons who took part in the same, learned that persons answering such description were in the waiting room of a railroad station. He organized a posse and proceeded to the railroad station. When the posse reached the station they rushed in and advanced toward the suspected men, and the marshal called out "Hands up!" "Hands up!" Some of the witnesses testified that he also added the words, "We want you." The suspected men began

firing at the posse and, in the ensuing gun fight, one of the posse received a gunshot wound from which he died. One of the suspected men was indicted, found guilty of murder, and appealed. It was found by this court that the case must be reversed on several grounds of error which were alleged. Among these was an instruction which told the jury that, if the officer, upon reasonable information and belief of the defendant's guilt, "summoned a posse of citizens, and with them, armed with guns and revolvers, went to the depot where the defendants were at the time, and with and in the presence of the posse called upon the defendants to throw up their hands and informed them that he wanted them, then the resistance was unlawful, and if, in making such defense, Sundblad was killed, then defendants were guilty as charged." This court held the instruction to be erroneous because it failed to further tell the jury that, before they could find the defendant guilty as charged, "they must also find that defendants knew, or as reasonable men ought to have known, that their arrest was sought by lawful authority, and that their personal safety was not being imperiled at the hands of the arresting force. * * * *and it should have been left to the jury to say whether defendants were sufficiently apprised of the lawful purposes of the marshal and his party.*" (Italics are ours.) In discussing the manner in which the arrest in that case was attempted to be made, this court further said:

"The statute provides (Code, section 5199) that a person making an arrest must inform the person to be arrested of the intention to arrest him and of the cause thereof, and require him to submit to custody. No particular form of words is prescribed, but the information is to be given to the person accused, and opportunity given him to submit in an orderly and peaceable manner, unless good reasons appear for the omission of such duty. It is doubtless true that under some circumstances, as where the accused person is fleeing from the officer, or is making active resistance, these formalities need not be strictly observed."

Instead of supporting the appellant's contention, we think the Phillips case sustains the claim of the appellee that the validity of the attempted arrest was properly left to the jury.

In the case at bar the court, on its own motion, clearly and fully stated to the jury the law in regard to the right of an

officer to make an arrest without a warrant, where a crime had been committed and the officer had reasonable ground for believing that the person attempted to be arrested was guilty of the crime, and also stated to the jury the statutory requirements to be observed by an officer in making an arrest under such circumstances. The court's instructions also told the jury that, if the officers, Kirlin and Clary, did not have a right to arrest the two men on the street in Missouri Valley at the time in question, or did not do so in a legal manner, they were guilty of an assault upon these persons, which such persons would have a right to resist, and the instructions fully explained to the jury the law in regard to the resistance which might legally be offered by persons thus unlawfully attempted to be arrested. We find no errors in the instructions given by the court or in its refusal to give the instructions requested by the appellant.

III. Upon the trial of the case appellant introduced evidence as to his reputation as to being a quiet, peaceable, law-abiding citizen, and requested the court to give an instruction as follows:

"The defendant has offered testimony of five witnesses, which he was limited by the court as to the number, upon the issue and question of his good reputation as to being a quiet, peaceable, law-abiding citizen in the community where he resides. The purpose of such testimony is to bear upon the question whether a person of such disposition would be liable to commit the offense alleged in the indictment. As a general rule good reputation or character is not a defense to the commission of a crime where the commission of the crime is shown beyond a reasonable doubt. But as in this case, where the defendant proves that he has a good reputation in the community where he resides as to the essential elements involved in the crime of which he is charged in the case, then such evidence of his good reputation as to such traits of character as are involved in the alleged crime, may be sufficient in and of itself to generate a doubt as to the guilt of the defendant of the crime charged against him, and entitle him to an acquittal. And in this case if you find from the evidence that the defendant, John Fador, was at the time of the alleged commission of the crime in question, that is, assault with intent to commit murder upon James Kirlin, was a quiet, peaceable, law-abiding citizen that evidence alone in and of itself will

be sufficient to entitle the defendant to your verdict of not guilty, and if you so find it will be your duty to find the defendant not guilty herein.''

This requested instruction was refused by the court which, on its own motion, gave its instruction 27 as follows:

''The defendant has introduced testimony tending to show that his general reputation as to being a quiet, peaceable, law-abiding citizen in the community in which he lives was good. This testimony is competent and should be considered by you in connection with all the other evidence in the case. It is not, however, a defense to crime actually committed, but is a circumstance to be considered by you in connection with all the other evidence in determining the guilt or innocence of the defendant. It may be considered as tending to show that a man with such a reputation would not be likely to commit the crime charged in the indictment, or of any of the above described included offenses. It should be given consideration irrespective of whether other evidence is conclusive or not, and it is for you to determine from all the facts and circumstances in the case what weight should be given to such testimony.''

■■■ Appellant claims error in the refusal of the court to give the requested instruction and in the giving of instruction No. 27 of the court's charge. It may be conceded that the first part of the requested instruction, in regard to the general effect of evidence of good reputation, contains a correct statement of the law. In the remaining part of the instruction, however, the court was asked to tell the jury that, if they found from the evidence that John Fador was a quiet, peaceable, law-abiding citizen, that evidence alone would be sufficient to entitle him to a verdict of not guilty, and that, if they so found, it would be their duty to find him not guilty. A mere glance at this portion of the instruction is sufficient to indicate that it does not state the law. Apparently, appellant's counsel were aware of this when they prepared their argument in this case, because they there contend that the requested instruction correctly states the law, because, as they claim in their argument, this instruction told the jury that, if the defendant proved his good reputation, ''such evidence of his good reputation * * * *may* be sufficient in and of itself to generate a doubt as to the guilt of the defendant'', and

that if the jury found that ''the defendant was a quiet, peaceable, law-abiding citizen, that evidence alone in and of itself *might* be sufficient to entitle the defendant to a verdict of not guilty.'' Obviously, the appellant's argument assumes the language, in the portion of the instruction referred to, to be other than as set out in the instruction itself. The instruction referred to was requested as a whole, and, so far as the record shows, there was no request that any particular portion of it be given alone or included in the court's instruction.

It is contended, however, that the instruction given by the court fails to include within it the elements which the jury should have been told to consider in connection with the evidence as to good reputation. Great stress seems to be placed upon the fact that the instruction given does not specifically tell the jury that the evidence of good reputation ''may be sufficient in and of itself to generate a doubt as to the guilt of the defendant of the crime charged against him, and entitle him to an acquittal.'' Much reliance seems to be placed by the appellant upon the case of State v. Reynard, 205 Iowa 220, 223, 217 N. W. 812, 814. In that case the defendant requested an instruction which contained substantially the matters set out in the first part of the instruction asked by the defendant in the case at bar. The trial court refused the instruction requested and in its own instruction told the jury:

'' 'You are instructed that the defendant has introduced evidence as to his good character prior to April 23, 1925. The jury have a right to consider the same as bearing on the general issue of the defendant's guilt or innocence. It is to be considered upon the theory that men of good character are less likely to commit crime than men of bad character. *It does not rebut the commission of the crime, except by inference, and may be considered by the jury in such light and for such reason.*

'' 'If, from all the evidence in the case, including the evidence as to the good character of the defendant, you have a reasonable doubt of the guilt of the defendant, then you should give him the benefit of such doubt, and acquit him. But if, from all the evidence in the case, including the evidence as to the good character of the defendant, you have no reasonable doubt as to the guilt of the defendant, then you should return a verdict of guilty.' '' (Italics are those of the writer of the opinion of this court on that appeal.)

In discussing this instruction, this court said:

"It may be conceded, also, that Instruction No. 15, given by the court, barring the sentence above italicized (italics are ours), in the absence of more specific request, was substantially correct, as a statement of law. It was, however, somewhat lacking in specification in the material respect pointed out by the requested instruction. It was material to the defendant that the jury should know that good character might be sufficient to generate a reasonable doubt of guilt. In all cases where we have approved instructions on that subject, it has been upon the ground that they were sufficient to convey to the jury that very meaning. Whether the italicized portion of Instruction No. 15 tended to withhold from the defendant the benefit of the rule is a question upon which we have some doubt. If good character is sufficient to generate a reasonable doubt of guilt, it necessarily tends to rebut guilt, to that extent. For this reason, the correctness of the italicized portion of the instruction is at least debatable. Its approach to error may be readily avoided on a new trial, and we may safely assume that it will be avoided. *We pass the question, therefore, without deciding it.*" (Italics are ours.)

It is apparent that the Reynard case does not decide the point raised by the appellant in the case at bar, because it expressly states that no decision is made on it, and the case was not reversed on account of the instruction given. Moreover, the real criticism of the instruction in that case was based upon the language at the end of the first paragraph of the court's instruction in which it was said, referring to evidence of good character, "It does not rebut the commission of the crime, except by inference, and may be considered by the jury in such light and for such reason."

▮▮▮ Complaint is also made of the portion of the court's instruction which told the jury, in reference to evidence of good reputation, that, "It is not, however, a defense to crime actually committed, but is a circumstance to be considered by you in connection with all the other evidence in determining the guilt or innocence of the defendant." It is claimed by the appellant that such evidence is of a higher character than a circumstance and that the jury should not have been told that such was not a defense to a crime actually committed. That such evidence is not a defense seems to be the holding in State v. Schumacher, 195

Iowa 276, 191 N. W. 870; State v. Hilman, 203 Iowa 1008, 213 N. W. 603; State v. Johnson, 211 Iowa 874, 234 N. W. 263. That there was no error in referring to the evidence of good character as a circumstance is also sustained, we think, by State v. Shultz, 177 Iowa 321, 158 N. W. 539; State v. King, 122 Iowa 1, 96 N. W. 712; State v. Bell, 206 Iowa 816, 221 N. W. 521. The court's instruction must be read and considered as a whole and in connection with all other instructions. When this is done, we think the jury was clearly told and sufficiently understood from the instructions that if, considering all the evidence, including the evidence as to good reputation, they had any reasonable doubt as to the defendant's guilt, it was their duty to acquit him.

IV. Error is alleged in the admission of the evidence of one A. R. Skinner as to having seen a man named Tom Limerick in Sterling, Colorado, two days after the commission of the crime charged in the indictment, and as to having seen a man in company with said Limerick who the witness said resembled the defendant. There was also evidence given by said witness that the car in which he saw Limerick was a Ford roadster or cabriolet, and after he testified, he was requested to go with the sheriff and look at the defendant's car. After leaving with the sheriff he did not return to the court. As far as the record shows, however, neither side requested the further attendance of this witness before resting. On the failure of the witness to return to testify the defendant made no effort to strike his testimony, but proceeded to introduce evidence by the defendant himself in rebuttal thereof. It is claimed by appellant that the purpose of the state in introducing the evidence given by the witness, Skinner, was to prejudice the defendant by attempting to show that he was associated with Tom Limerick who was a notorious gunman and bank robber. The record shows nothing as to the reputation of Tom Limerick. So far as we can find, there is nothing in the record to indicate that any of the evidence elicited from the witness, Skinner, was in any way prejudicial to the defendant.

The judgment and rulings of the trial court, from which the appeal was taken, are, therefore, affirmed.—Affirmed.

PARSONS, C. J., and HAMILTON, ALBERT, STIGER, MITCHELL, and KINTZINGER, JJ., concur.

RICHARDS, J., dissents.