**David O. ALLISON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 90–CM–237.

District of Columbia Court of Appeals.

Argued Sept. 6, 1991.
Decided April 16, 1993.

Karen J. Krueger, appointed by this court, for appellant. Sidney R. Bixler, Washington, DC, also appointed by this court, was on the brief.

Kathleen M. O'Connor, Asst. U.S. Atty. with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, and Robert J. Meyer, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

TERRY, Associate Judge:

Having been charged with three firearm-related misdemeanors, appellant Allison entered a conditional plea of guilty under Super.Ct.Crim.R. 11(a)(2) to one of them, carrying a pistol without a license.[1] In doing so, he reserved the right to challenge on appeal the denial of his motion to suppress evidence. Allison now claims that a gun which he discarded while being chased by a police officer should have been suppressed because the police lacked reasonable grounds to stop him. The Supreme Court has held, however, that a person who flees from a police officer's "show of authority" is not "seized" for Fourth Amendment purposes until the person either submits to that authority or is caught. *California v. Hodari D.*, — U.S. —, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Applying that principle here, we hold that Allison was not seized until after he threw away the gun, that the gun was therefore abandoned property, and that its retrieval by the police did not violate Allison's Fourth Amendment rights. Thus we reject Allison's Fourth Amendment argument and affirm his conviction.

I

Shortly before midnight on September 28, 1989, four undercover police officers in an unmarked police car drove into a parking lot on Benning Road, N.E. Officer Edward Howard, the driver, testified that as he entered the parking lot, he saw appellant Allison and another person "standing together ... with their hands extended," engaged in what he believed to be a drug sale. Howard immediately pulled the car to a stop, and as he did so, several other people in the area began to yell "jumpouts" at the sight of the car. Allison looked up at the police car as it approached, then threw something to the ground (which was not recovered) and ran toward the rear of a building. Officer William James got

---

1. D.C.Code § 22–3204 (1989).

out of the car, identified himself as a police officer, and started to run after Allison, while Officer Howard drove the car around the building to block Allison's escape route. As James gave chase, he saw Allison pull what looked like a gun out of his waistband and throw it into a nearby bush. After Officer James caught up with Allison and handcuffed him, he directed Officer Howard to the bush where he had seen Allison throw the object. Howard went to that spot and found a gun, which he seized.

Allison moved to suppress the gun, but the trial court, after a hearing, denied the motion. The court held that Officer James did not have an "articulable basis" for stopping Allison, because James testified that he was unable to see whether it was Allison or his companion who threw something to the ground as the unmarked car approached. However, the court found that Officer Howard did have an articulable suspicion of Allison's involvement in a drug transaction, and hence that he would have made a constitutionally valid seizure of Allison if Officer James had not caught him first.

## II

This court has held that the "initiation of a police chase ... constitutes a 'seizure' for Fourth Amendment purposes." *In re D.J.*, 532 A.2d 138, 140 (D.C.1987). That holding must be modified, however, in light of the Supreme Court's more recent decision in *California v. Hodari D., supra.* To the extent that its search and seizure decisions may be inconsistent with ours, we must defer to the Supreme Court because it is the ultimate authority in interpreting the Fourth Amendment—or, indeed, any other part of the Constitution.

In *Hodari D.* police officers in an unmarked car approached a group of youths, including the respondent Hodari, who took flight when they saw the car coming toward them. An officer ran to cut off Hodari's escape, but Hodari did not see him

"until the officer was almost upon him, whereupon he tossed away what appeared to be a small rock. A moment later [the officer] tackled Hodari, handcuffed him, and radioed for assistance.... [T]he rock he had discarded was found to be crack cocaine." — U.S. ——, 111 S.Ct. at 1549. The Supreme Court held that when the police seek to detain a person by making a "show of authority," no seizure occurs until the person submits to that show of authority[2] or is actually restrained by an officer's physical force. *Id.* —— U.S. at ——, 111 S.Ct. at 1551–1552.

> The word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful.... It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is no seizure.

*Id.* —— U.S. at ——, 111 S.Ct. at 1550 (footnote omitted). Thus the Court ruled that the respondent had not been seized when he abandoned the cocaine, and that the cocaine was therefore admissible. *Id.* —— U.S. at ——, 111 S.Ct. at 1552.

■ *Hodari D.* is controlling here. Officer James made a show of authority by identifying himself as a police officer as he got out of the police car. But Allison, instead of submitting to that show of authority, chose to run away. Thus, under *Hodari D.*, James did not "seize" Allison within the meaning of the Fourth Amendment until he caught him; as a result, the recovery of the gun "was not a 'seizure' in the fourth amendment sense, but merely a retrieval of abandoned property." *Brown v. United States*, 261 A.2d 834, 835 (D.C. 1970) (citations omitted); *see Hester v. United States*, 265 U.S. 57, 58, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924) ("there was no seizure in the sense of the law when the officers examined the [incriminating evidence] after it had been abandoned");

---

**2.** The phrase "show of authority" comes from *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968):

> Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

*United States v. Speed,* 388 A.2d 892, 893 (D.C.1978); *Smith v. United States,* 292 A.2d 150, 151 (D.C.1972).

## III

Faced with the clear holding of *Hodari D.,* Allison urges in the alternative that the gun should have been suppressed because its seizure was the fruit of police conduct which, if not unconstitutional, was at least contrary to law.[3] He relies on *Schram v. District of Columbia,* 485 A.2d 623 (D.C. 1984), and *District of Columbia v. Perry,* 215 A.2d 845 (D.C.1966), two cases in which we held that evidence must be suppressed because in each case, although the arresting officer had probable cause, he lacked legal authority to make the arrest.[4] The government urges us not to extend *Schram* and *Perry* to the case at bar, reminding us that, with very rare exceptions,[5] "suppression is a remedy ordinarily reserved only for a breach of one's constitutional rights." *United States v. Lockett,* 919 F.2d 585, 589 (9th Cir.1990).

Allison's argument is based on the assertion that Officer James' pursuit of him, based on nothing more than what Allison regards as a "hunch," amounted to an "unlawful attempted seizure," which he says was prohibited at common law. He cites a footnote in the *Hodari D.* opinion as support for this proposition, but that footnote is far from conclusive on this point. It says: "The common law may have made an

attempted seizure unlawful in certain circumstances; but it made many things unlawful, very few of which were elevated to constitutional proscriptions." *Hodari D., supra,* —— U.S. at —— n. 2, 111 S.Ct. at 1550 n. 2. We agree with the government that "there appears to be substantial support for the idea that constables and other peace officers had great latitude at early common law to detain and question 'suspicious characters' in circumstances that plainly would not constitute 'articulable suspicion' in the modern sense, and for periods of time that would plainly exceed the permissible scope of a modern *Terry* stop." *See, e.g., Lawrence v. Hedger,* 3 Taunt. 14, 128 Eng.Rep. 6 (1810) (watchman acted properly by detaining man overnight solely on ground that man was carrying bundle at night). *See also* Warner, *The Uniform Arrest Act,* 28 VA.L.REV. 315, 317–324 (1942).

The absence of a clear violation of common-law principles makes *Schram*—and, by extension, *Perry*—inapplicable to the instant case, for such a violation was central to *Schram*'s holding. In *Schram* we noted that D.C.Code § 23–581, the warrantless arrest statute, "is, in all respects relevant here, a codification of the common law of arrest...." 485 A.2d at 624 (citation omitted).[6] *Schram* relied upon *Miller v. United States, supra* note 5, in which the Supreme Court held that evidence obtained in violation of a statute that was deeply rooted in the common law's protection of priva-

---

**3.** At our request, the parties filed post-argument supplemental briefs addressing this issue. Both briefs have been of substantial assistance to the court.

**4.** In *Perry* we held that a Maryland police officer had no authority to arrest the defendant for speeding in the District of Columbia, and that a United States Park Police officer who came along a moment later could not arrest the defendant without a warrant because the offenses of speeding and driving under the influence of intoxicating liquor, both misdemeanors, "were not committed in the presence of, or within the view of, the [Park Police] officer." 215 A.2d at 848 (footnote omitted). In *Schram* the defendant had likewise been arrested for a misdemeanor not committed in the arresting officer's presence, contrary to D.C.Code § 23–

581(a)(1)(B) (1989), the statute governing warrantless arrests for misdemeanors. We cited *Perry* in holding this arrest unlawful.

**5.** *E.g., Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *Accarino v. United States,* 85 U.S.App.D.C. 394, 179 F.2d 456 (1949).

**6.** The same was true in *Perry,* in which we held that the arrest was beyond the statutory power of the officer. *See Maghan v. Jerome,* 67 App. D.C. 9, 10, 88 F.2d 1001, 1002 (1937) ("in this jurisdiction, as at common law," officer cannot arrest without warrant for misdemeanor that is not "committed in his presence or within his view," citing predecessor to statute involved in *Perry* ).

cy should be suppressed.[7] Without at least a clear showing that the common law prohibited Officer James' pursuit of appellant Allison, much less a statute incorporating such a prohibition, we decline to extend the limited exclusionary rule of *Schram* to the instant case.

■ Allison also argues that Officer James' "unlawful attempted seizure" constituted an assault under D.C.Code § 22–504 (1989), and that the gun should therefore be suppressed as the fruit of this allegedly illegal conduct. We disagree. Even if we assume for the sake of argument that an assault might justify suppression, there is no way in which we could find that what the officer did here constituted an assault.

We say this for two reasons. First, it has long been the law here and elsewhere that a police officer, acting within the scope of his or her authority while making (or attempting to make) an arrest, cannot be guilty of an assault:

> [T]he officer has a right to act with reference to the facts as they *then* appear to him, provided only that he acts in good faith. In other words, if the officer has reason to believe that the person he is about to arrest is [dangerous] and acts accordingly, the officer is not to be con-

victed of assault because it subsequently develops that he was mistaken.

*Barrett v. United States,* 62 App.D.C. 25, 26, 64 F.2d 148, 149 (1933) (emphasis in original; citations omitted). More recently, this court has held:

> In making an arrest ... a police officer is privileged even to *use* force unless the "means employed are in excess of those which the actor reasonably believes to be necessary." ... We conclude that a police officer is protected to an even greater degree against assault claims arising from arrests: unless the *threatened* use of force is clearly excessive, an officer is protected against liability for assault.

*Jackson v. District of Columbia,* 412 A.2d 948, 956 (D.C.1980) (emphasis in original; citation and footnotes omitted); *see also* 6 AM.JUR.2D *Assault and Battery* § 45 (1963). Allison has cited no case, and we are aware of none, in which an officer was held to have committed an assault by *attempting* to arrest or detain another person when that person fled or tried to flee. *Cf.* RESTATEMENT (SECOND) OF TORTS § 41, comment h, illustration 10 (1965) (no liability for false arrest when B flees from A "to avoid the chance that A might attempt to enforce [an invalid] warrant by physical restraint").[8]

---

7. In *Miller* the Supreme Court held that when police forcibly enter a private home to make an arrest, they must first give the occupant of that home "notice of their authority and purpose." 357 U.S. at 313, 78 S.Ct. at 1197. The Court traced this "knock and announce" rule, which is codified in 18 U.S.C. § 3109 (1988), back to the common law. "From earliest days," the Court said, "the common law drastically limited the authority of law officers to break the door of a house to effect an arrest. Such action invades the precious interest of privacy summed up in the ancient adage that a man's house is his castle." *Id.* at 306–307, 78 S.Ct. at 1194–1195 (footnote omitted).

8. There is some authority for the proposition that "[o]ne who undertakes to make an arrest without lawful authority, or who attempts to do so in an unlawful manner, is guilty of an assault if the other is ordered to submit to the asserted authority...." Perkins, *The Law of Arrest,* 25 IOWA L.REV. 201, 263 (1940) (citations omitted). With one exception, however, the cases which Perkins cites involve either police officers making arrests beyond the territorial limits of their authority to arrest, like the Maryland officer in

*Perry v. District of Columbia, supra,* or officers who use excessive force (and therefore act "in an unlawful manner"), a situation not present here.

The one exception is *State v. Fador,* 222 Iowa 134, 268 N.W. 625 (1936), in which the defendant shot and wounded one of two police officers who were trying to arrest him. He then fled but was arrested a few days later. At trial he asserted *inter alia* that the officers had failed to comply with statutory requirements for an arrest, and that he therefore had a right to defend himself. He was convicted of assault with intent to do great bodily injury, and on appeal he challenged the trial court's instructions, which told the jury "that if the officers ... did not have a right to arrest the two men [Fador and another] on the street ... or did not do so in a legal manner, they were guilty of an assault upon these persons which such persons would have a right to resist...." *Id.* at 140, 268 N.W. at 628. The focus of the instructions was on "the resistance which might legally be offered by persons thus unlawfully attempted to be arrested." *Id.* The Supreme Court of Iowa found no error and affirmed the conviction.

Second, D.C.Code § 22–504 has been held to be a codification of the common law of assault. *Ray v. United States*, 575 A.2d 1196, 1198 (D.C.1990); *Guarro v. United States*, 99 U.S.App.D.C. 97, 99, 237 F.2d 578, 580 (1956). At common law, an officer was privileged to make an arrest (and thus, *a fortiori*, privileged to attempt to make an arrest) without a warrant if the officer had reasonable grounds to believe that a felony had been committed[9] and that the arrestee had committed it. R.M. PERKINS & R.N. BOYCE, CRIMINAL LAW 1094 (3d ed. 1982); *see United States v. Watson*, 423 U.S. 411, 418, 96 S.Ct. 820, 825, 46 L.Ed.2d 598 (1976) ("ancient common-law rule"); *Carroll v. United States*, 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925). In addition, one who alleges an assault under section 22–504 must prove either an attempt to cause physical injury or an intent to frighten the victim. *See Robinson v. United States*, 506 A.2d 572, 574 (D.C.1986). The evidence of record in this case shows neither. There is thus no factual or legal basis for any claim that Allison was the victim of an assault.

The judgment of conviction is accordingly

*Affirmed.*

---

9. We cannot accept the assertion that Allison's arrest was based on a mere "hunch." Officer Howard saw Allison and another person engaged in what appeared to be a sale of drugs, which is (except as to Schedule V substances) a felony under D.C.Code § 33–541(a) (1988). Under applicable precedent, Howard's knowledge would be attributable to Officer James as well. *See In re M.E.B.*, No. 90–FS–1602, slip op. at 14–18, —— A.2d ——, ——–—— (D.C. February 23, 1993) (discussing "collective knowledge" doctrine); *Smith v. United States*, 123 U.S.App.D.C. 202, 204–205, 358 F.2d 833, 835–836 (1966). Thus we are satisfied that the arrest was based on probable cause to believe that Allison had just been committing at least a misdemeanor, and probably a felony, in Howard's presence.