STATE OF IOWA, Appellee, v. EDITH CHRISTY, Appellant.

WITNESSES: Examination—Assumption of Fact. Reversible error
1    results from permitting to be answered a question which clearly embraces an assumption of the truth of a vitally material fact in issue.

**WITNESSES: Examination—Undue Curtailment.** In the trial of a
criminal cause,—especially a grave one,—the accused is entitled
to liberality in the cross-examination of the witnesses for the State.
Record reviewed, and held to show undue curtailment of the right.

*Appeal from Winneshiek District Court.*—JAMES D. COONEY,
Judge.

DECEMBER 11, 1924.

THE defendant was indicted and tried on the charge of
keeping a house of ill fame, in the city of Decorah, Iowa. There
was a verdict of guilty, and sentence rendered thereon, and
the defendant has appealed.—*Reversed.*

*E. R. Acres,* for appellant.

*Ben J. Gibson,* Attorney-general, and *J. A. Nelson,* for ap-
pellee.

EVANS, J.—The house which was charged to be one of ill
fame was a two-story brick house, on the west side of the river
in the city of Decorah. The lower story thereof was occupied
as a grocery store. The second story thereof was fitted up as
a residence apartment or flat, and was rented as such to one
William Larson. Larson moved into it with his family, con-
sisting of his wife and two small children. The defendant was
a graduate nurse, and was employed in a hospital in the city.
In this house, the wife of Larson became ill, and died as a result
of such illness. The defendant attended her as nurse, up to the
time of her death. After the death of the wife, this defendant
continued to devote at least a part of her time to the care of
this household, and she lodged and boarded there. The indict-
ment herein was found in February, 1924. The evidence of the
State is directed to a showing that this place was kept as a
house of ill fame during the three months next preceding. Wil-
liam Larson was likewise charged, and later convicted, under
a separate indictment for the same offense. That is to say, he
was charged with the keeping of this house as a house of ill
fame. The State introduced evidence of the bad reputation of

Larson and of the house. It also introduced evidence of a particular occasion in December, 1923, when a so-called ''booze party'' was held in this house, and was attended by persons of bad reputation. Two of these persons were Fleckenstein and Holm, two college students, attending a local college. They were witnesses for the State. Another person present was Nellie Van Gorder, hotel waitress and a witness for the State. At this party, intoxicating liquor was imbibed freely. Late in the evening, the entire party purported to leave the rooms and to go to that part of the town on the east side of the river. Four of them, however, stealthily remained after the others had gone. These four were Fleckenstein and Holm, Nellie Van Gorder, and a girl companion. These three named witnesses testified to immoralities committed by them in this apartment during the absence of the rest of the party. The evidence at this point is damaging to the character for virtue of all concerned, and is quite unprintable. We state only sufficient thereof to show the bearing of certain examination of witnesses upon which grounds of reversal are laid. The issue tried under the indictment was whether the defendant, Edith Christy, was a *keeper* of this house, or was she a mere employee of the keeper thereof?

I. Tavener, the city marshal, was a witness for the State. He was one of the officials who had raided this apartment on the night of February 16th, just preceding the indictment. Nothing incriminating was discovered in that raid. The case of the State is predicated upon events that occurred prior thereto.

1. WITNESSES: examination: assumption of fact.

The State put to this witness the following question:

''Q. Do you know the general reputation of the house occupied by Edith Christy in Decorah between December 1, 1923, and February 16, 1924, as so kept by her? Answer that, yes or no.''

Over appropriate objections by the defendant, the court permitted this question to be answered in the affirmative. Over like objections, the court permitted the witness to say that the reputation was bad. The identical question was put to Rima, a police officer, and was likewise permitted, over appropriate objection. He also testified, over like objection, that the reputation was bad.

The identical questions were also put to Christian, the sheriff, and answered, over objection, in like manner. A part of the objection made directed specific reference to the latter part of the interrogatory, "as so kept by her," as being an assumption of the very fact which had to be proved by the State and passed on by the jury.

The objections should have been sustained. The impropriety of the question in this form is palpable, and leaves no room for debate. The error could not be otherwise than prejudicial. Competent evidence in the record on that particular issue is very meager indeed, and the State should not have been permitted to cover up any infirmity in its case by incorporating into its interrogatory such an assumption of fact.

II. Many errors are assigned on the ground that the court erroneously refused proper cross-examination of the State's witnesses. We shall not go into much detail on this question. A careful reading of the record satisfies us that counsel for the defendant was unduly restricted in that regard. One or two illustrations from the record will suffice to indicate the nature of our holding. The following is the record of the cross-examination of the witness Tavener:

2. WITNESSES: examination: undue curtailment.

"I had a search warrant for intoxicating liquors against Mr. Larson, when I went over that night. I couldn't say how many times I have seen Edith Christy prior to the night we went over there. I have seen her going to and from the hospital, and know of her being one of the nurses. I haven't taken more interest in this case than an ordinary officer would do.

"Q. Before there was any kind of a proceeding against Edith Christy, you went to her and told her to come down to the county attorney's office and to the state agent, didn't you? (Objected to as incompetent, irrelevant, and immaterial; not proper cross-examination. Objection sustained. Defendant excepts.) Q. Then you went and told her that she had to come down, and you two went down to a room in the Winneshiek Hotel? (Same objection. Objection sustained. Defendant excepts.) Q. And you told her you would have her arrested if she didn't go down with you? (Same objection. Objection sustained. Defendant excepts.) Q. Now, then, after that, you did

file a complaint against her, didn't you? A. Yes. And I did go and arrest her. Q. Then you did take her right over to Howard Barthell's office, where you yourself had filed a complaint? (Objected to as incompetent, irrelevant, and immaterial; not cross-examination. Objection sustained. Defendant excepts.) Q. And when the case was called, you happened up, and told her to go, didn't you, when I was there? (Objected to as incompetent, irrelevant, and immaterial; calling for matters collateral and foreign to matters in issue. Objection sustained. Defendant excepts.) At the time I made the statement about William Larson's general reputation for morality and decency, was not the agent for the International Harvester Company; he had ceased to be sometime in the fall; but I say his general reputation was bad between the 1st of January, 1924, and the 15th of April. Yes, I found about a teaspoonful of intoxicating liquor in the bottle up at Larson's· place that night. When I talked with the girls up there, they told me they were all sleeping in that bed when we came in."

Redirect Examination by Mr. Nelson.

"This was an ordinary bed. There was one child and three women in the bed."

It will be noted that objection was sustained to a number of questions. We see no legitimate ground of objection to any of such questions.

III. Fleckenstein testified for the State to the details of immorality committed by him and Nellie Van Gorder, and to like immorality witnessed by him and committed by Holm and a girl companion of Nellie Van Gorder's. We quote the following from his cross-examination:

"Q. You went with Mr. Nelson, the county attorney, to the restaurant for dinner that day. Did he pay for your dinner? A. I don't know. Q. You didn't pay for it? A. No, sir. Mr. Nelson invited me to go. I had a talk with Mr. Nelson about what my testimony was going to be yesterday or the day before, that was at the William Larson trial. Also had a talk with Mr. Moore, the state agent, and Herman Tavener in Mr. Nelson's office. Mr. Tavener came and called me. Q. Now, did you go with Mr. Tavener? (Objected to as immaterial. Ob-

jection sustained. Defendant excepts.) Q. Now, have you had any talk with Mr. Nelson about what your evidence was going to be, or what it wouldn't be? (Objected to as incompetent, irrelevant, and immaterial, calling for an opinion and conclusion of the witness, improper, not proper cross-examination. Objection sustained. Defendant excepts.) Q. Tell whether or not the county attorney made any threats that he would send you to the penitentiary if you didn't tell certain things. (Objected to as incompetent, irrelevant, and immaterial, not proper cross-examination, question improper, improper method on the part of counsel. Objection sustained. Defendant excepts.) Q. Tell us just what Mr. Nelson said to you. (Same objection. Objection sustained. Defendant excepts.) Q. Tell us whether or not Mr. Nelson made any threats to you. (Same objection. Objection sustained. Defendant excepts.)

"By the Court: That has been asked and ruled on before. Q. What did Mr. Nelson say to you? (Same objection. Objection sustained.)

"By the Court: I am inclined to try this case, and not the county attorney.

"By Mr. Acres: I am not trying the county attorney.

"By the Court: The objection has been made and ruled on. Proceed.

"After we turned out the lights, Edith Christy was not there. Q. She didn't know beforehand what you boys were going to do, did she? (Objected to as incompetent, irrelevant, and immaterial, calling for an opinion and conclusion. Objection sustained. Defendant excepts.) Q. You didn't tell what you young people were going to do,—you four people,—when she was going over to town, did you? (Objected to as incompetent, irrelevant, and immaterial, not cross-examination, and immaterial. Objection sustained. Defendant excepts.) Q. Well, you didn't say anything to Edith Christy about doing anything or not doing anything when you were up there, did you? (Objected to as incompetent, irrelevant, and immaterial, calling for an opinion and conclusion of the witness. Objection sustained. Defendant excepts.) A. I didn't say anything to Edith Christy up there that evening, before she and the rest went away. I didn't say anything. She didn't say anything to me; and when she got

back, she made us boys leave. Told us to get out; and we did get out. But we both got right out, the minute Edith Christy told us to. I think we had the lights out for about ten or fifteen minutes. Q. It was rather a hurry-up proposition, wasn't it? (Objected to as incompetent, irrelevant, and immaterial, not proper cross-examination; the question is improper. Objection sustained. Defendant excepts.) Q. You boys were in a rush to get the lights out and get them on again, weren't you? (Objected to as incompetent, irrelevant, and immaterial, not proper cross-examination; the question is improper. Objection sustained. Defendant excepts.)''

The record is quite replete with similar rulings, unduly restricting the privilege of cross-examination by defendant.

There was doubtless much in the attempted cross-examination that was not very material, and was calculated to try the patience of the court. But the privilege of cross-examination within its proper field is a very substantial right, and is essential to the proper sifting and testing of the evidence and of the appropriate weight to be given thereto. To a defendant charged with a grave crime, the right of cross-examination of the State's witness should be extended liberally. We feel constrained to say that this right was abridged in this case.

In view of a new trial, we are not disposed to deal with further details of the evidence. Some of the errors assigned are such as cannot arise upon a new trial. This is notably true as to whether the court ought to have granted a continuance.

For the particular reasons here indicated, the judgment below must be, and accordingly is,—*Reversed.*

ARTHUR, C. J., and PRESTON and FAVILLE, JJ., concur.