STATE OF IOWA, Appellee, v. EDDIE ROWE, Appellant.

No. 46816.

MARCH 11, 1947.

William P. Welch and William H. Welch, both of Logan, for appellant.

John M. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, Harold Hanson, County Attorney, and J. J. Hess, Special Prosecutor, of Council Bluffs, for appellee.

MANTZ, J.—Eddie Rowe, of Missouri Valley, Iowa, was indicted, charged with the crime of assault with intent to commit great bodily injury. He pleaded not guilty but upon trial was convicted and was by the court sentenced to serve a period of one year in the penitentiary at Fort Madison, Iowa. His motion for a new trial was overruled and this appeal followed.

On this appeal appellant sets up various grounds: errors of the court in the admission and rejection of evidence; the giving of certain instructions; the refusal to give requested instructions; the insufficiency of the evidence; and the refusal of the court to direct a verdict in his favor.

I. Before taking up the various matters wherein it is claimed the trial court erred, we think that it will be helpful

to set out a brief summary of the record as throwing light upon the questions raised by this appeal.

On May 21, 1945, Eddie Rowe, aged fifty-eight, married, the father of twelve children, lived in Missouri Valley, Iowa. He had lived there most of his life and followed the trade of a painter and paper hanger. At that time he was a constable in St. John Township of Harrison County, Iowa. Cy Varnes was then justice of the peace in such township. Such justice had a civil docket, which was generally kept in the common reception room of Attorneys C. W. Kellogg and Fred Egan, both of Missouri Valley. This docket contained cases entered, together with fees listed as belonging to various individuals, including justice of the peace, constable, and witnesses.

On the morning of May 21, 1945, Rowe went to the office where the docket was kept. Helen Longmeyer, office secretary for C. W. Kellogg, was at the office. Rowe asked to see the docket and claims that he wanted to take it to the office of Attorney Hugh Tamisiea, a block or two away, for the purpose of having such attorney go over some of the fees of Rowe there entered. Rowe says he told Miss Longmeyer of his purpose and then took the docket to Tamisiea's office, where it was found the next day. Miss Longmeyer claimed that she did not consent to the taking of the docket by Rowe, but does not deny that he may have told her his purpose in taking it to Attorney Hugh Tamisiea's office.

As soon as Rowe had taken the docket Miss Longmeyer telephoned to Varnes, justice of the peace, and advised him that Rowe had taken the docket. This was between nine and ten a.m. Varnes was still in bed. He at once called Howard Conaway, then chief of police of Missouri Valley, and told him Miss Longmeyer had telephoned him that Eddie Rowe had stolen his justice of the peace docket and told him to arrest Rowe. Sometime later Conaway saw Rowe on the street and told Rowe that Varnes had told him that Rowe had taken Varnes' docket from the office and had ordered Conaway to arrest Rowe. Rowe asked to be shown the warrant and Conaway told him he did not have a warrant but had an oral order from the justice of the peace to arrest him, which was sufficient, and that was what Conaway intended to do and if Rowe had

any complaint he would have to talk it over with the judge and if he refused to be arrested Conaway would use force. Rowe told Conaway that was what Conaway would have to do.

Rowe refused to submit to arrest under the oral order and an altercation took place between them, with both using force and both suffering various bruises and injuries. Following the altercation, Rowe was taken to the police station, where both he and the officer received medical aid. Following this appellant was taken to the county jail at Logan. While the record is not clear, it is quite evident that while he was in jail a charge of insanity was filed against him. However, the record fails to show how such charge was disposed of. As a witness, Rowe offered to show that such proceeding was dismissed by the commissioners of insanity. No charge or information was ever filed against Rowe accusing him of larceny in stealing the Varnes civil docket.

The appellant has set forth and argued fifteen divisions where he claims error was committed. We have gone over all of them but think it unnecessary to discuss each in detail.

II. The incident out of which the charged crime arose came about in an attempt on the part of Chief of Police Conaway to arrest appellant by virtue of an oral order given such officer by Justice Varnes, who directed the officer to arrest appellant for having stolen his civil docket. Varnes, the justice, based his order upon information telephoned to him that appellant had come to his office and removed therefrom the civil docket.

The State concedes that Officer Conaway did not have a written warrant when he sought to make the arrest; neither does it claim that the offense had been committed in the presence of said officer. The State claims in argument that the arrest was authorized by section 755.6, Code of 1946, which is as follows:

"'Arrests on oral order. A magistrate may orally order a peace officer or a private person to arrest anyone committing or attempting to commit a public offense in the presence of such magistrate, which order shall authorize the arrest.''

As a witness Varnes stated that on the morning of May

21, 1945, Miss Longmeyer phoned him and said that appellant had taken his docket and that he thereupon called the chief of police and told him to pick appellant up and get his docket back home. It was in attempting to carry out this oral order that the alleged crime was committed.

III. The first point argued by the appellant relates to the action of the court in failing to sustain his challenge to the juror Emory Totten, a member of the jury panel. Upon examination the juror stated that he was a police officer in Missouri Valley; that he worked under Chief of Police Conaway, and that prior to that time he had discussed the evidence with Conaway and Justice of the Peace Varnes. The juror was challenged for cause, which challenge was overruled.

The record shows that this juror was excluded by a peremptory challenge by appellant; also, that appellant exercised all of his peremptory challenges. We think that the trial court might properly have sustained appellant's challenge for cause. Section 779.5, Code of 1946 (section 13830, Code of 1939), sets forth the grounds for challenge for cause. Subsection 5 is as follows: "Standing in the relation of * * * master and servant * * *."

While the relation of master and servant, technically speaking, may not have existed between Totten and Conaway, yet such was the effect of such relationship. Conaway was the superior of Totten. Likewise, he was the prosecuting witness. The chief was in control and necessarily gave orders and directions to Totten. We would not reverse on this point alone. We suggest, however, that where reasonable doubts arise as to the competency of a juror, such juror should be excused.

IV. Appellant claims as error the action of the court in restricting and limiting him in the cross-examination of the witness Conaway on matters which he claimed would affect the credibility and good faith of said witness. The cause of the altercation between appellant and Chief of Police Conaway has heretofore been set out and we will not repeat.

At the trial of the case involved herein appellant sought by cross-examination to show that Conaway entertained a feeling of ill will and hostility toward the appellant. Upon objec-

tion of the State such testimony was excluded. Thereupon, counsel for the appellant made the following offer, dictating the same into the record:

"Mr. Welch: The defendant offers to show by this cross-examination of the witness, Conaway, that the said Conaway did not file any charges against Mr. Rowe before any magistrate, or mayor, or Justice of the Peace; that Mr. Rowe was taken to Logan from the city jail in Missouri Valley on the orders of Mr. Conaway without said Conaway having filed charges; that after arriving at Logan Mr. Rowe was placed in jail and later brought before the insanity commission of this county on a charge of insanity filed by Mr. Conaway against Mr. Rowe, and that while that case was pending, and before it was decided by the Commission, Conaway made a proposition to Mr. Rowe that if he would leave the State of Iowa within ten days or some specified number of days, that all charges would be dropped against Mr. Rowe, and that afterwards Mr. Rowe consented to the proposition, and after having consented to it and obtained his liberty he stated to Conaway that he was not going to leave town, or the State, and it was then that this prosecution was commenced on the order of Mr. Conaway."

The court sustained an objection that the evidence offered was not cross-examination. We hold that cross-examination along the line of that offered should have been permitted as bearing on the interest and activities of the witness Conaway, and we think that the court erred in so ruling. It is a well-established rule of law that in a criminal case the ill will or hostility of a witness testifying against one charged with the commission of a crime may be shown and that it is proper to do so by cross-examination. Such evidence may be considered by the jury in testing the credibility of such witness. Nolan v. Glynn, 163 Iowa 146, 142 N. W. 1029, Ann. Cas. 1916C, 559; State v. Christy, 198 Iowa 1302, 201 N. W. 42; State v. Seery, 129 Iowa 259, 105 N. W. 511; State v. Leftwich, 216 Iowa 1226, 250 N. W. 489; Jones on Evidence, Third Ed., 1302, chapter 21, section 829; 3 Wharton Criminal Evidence, Eleventh Ed., 2161, sections 1291–1294.

In the case of State v. Christy, supra, 198 Iowa 1302, 1308,

201 N. W. 42, 44, this court, speaking through Evans, J., said that the privilege of cross-examination within the proper field is a very substantial right and is essential to the proper sifting and testing of the evidence and of the appropriate weight to be given thereto:

"To a defendant charged with a grave crime, the right of cross-examination of the State's witness should be extended liberally."

On the question of bias, ill will, hostility, or interest of a witness, Jones on Evidence, supra, states that it is a well-settled rule that such matters may be shown by cross-examination. We do not think that it is material that the offer did not state that the purpose of the offered testimony was for the purpose of testing the credibility of Conaway. The interest of Conaway in the prosecution would go to his credibility. As to the meaning of the term "credibility," see State v. Greene, 187 N. C. 466, 122 S. E. 178; Smith v. Jones, 68 Vt. 132, 34 A. 424.

In so ruling, we are not losing sight of the rule that the scope of cross-examination of a witness is a matter within the discretion of the trial court. However, this is a legal discretion and should not be exercised so as to exclude matters vital and proper to the defense of one accused.

V. Appellant likewise claims the court erred in restricting him in the cross-examination of Varnes, the justice of the peace. Appellant claimed and sought to show that certain fees belonging to him had been entered in the civil docket and that he discussed this matter with Varnes and told the latter that he wanted a lawyer to look over such fee entries. Appellant further claimed that in seeking to secure warrants to arrest law violators who operated slot machines in Missouri Valley he had some friction with Justice Varnes. He sought to show such matters in cross-examination of Varnes but upon objection of the State witness was not permitted to answer. Appellant sought to show such matters as bearing on the interest and ill will of such witness. We hold that the witness should have been permitted to answer.

Later, when Rowe was a witness, he sought to show that he had discussed the matter of fees entered by Varnes and that

some ill feeling arose therefrom. Upon objection of the State the witness was not permitted to answer. We think the proffered evidence was competent and that its exclusion was error.

VI. We have heretofore set forth the statute dealing with the matter of arrest on oral order, which appellee argues is controlling. Section 755.6, Code of 1946. Such section deals with arrests on oral order. It may be helpful to analyze this section. In substance, it provides that a magistrate, such as a justice of the peace, may orally order a peace officer, such as a constable, to arrest anyone committing or attempting to commit a public offense in the presence of the magistrate, which order shall authorize the arrest.

Let us see how this fits into the situation in this case. Appellant, at about the hour of nine a.m., had gone to the office of Justice Varnes to inspect the civil docket of such official. Varnes was not there and had not been there that morning. After making some examination of the docket appellant took the same to the office of Attorney Hugh Tamisiea. After appellant took the docket Miss Longmeyer telephoned Varnes and advised him that appellant had taken the docket. Acting on this information, Varnes at once called Conaway, the chief of police, telling him that Rowe had stolen his docket and "told him to pick him up and get my docket back home." Conaway went out to look for appellant. We quote from his testimony:

"I drove east and west on Erie Street, and around one or two blocks in the business district and I was unable to locate him, I didn't see him, and I drove back to the People's State Bank—Mr. Varnes' office is upstairs—I went up to Mr. Varnes' office and Mr. Varnes wasn't there. I talked to Miss Longmeyer, the girl in the office there, or stenographer. Mr. Varnes told me she had informed him, and I asked her what had happened. Mr. Welch: Now, just a minute, I object to this as hearsay. The Court: Sustained. Exception by the plaintiff and/or defendant."

The objection was obviously directed toward the last sentence above quoted: "Mr. Varnes told me she had informed him, and I asked her what happened." Appellant made no motion

to strike the answer and it therefore remained a part of the record. See Omaha Beverage Co. v. Temp Brew Co., 185 Iowa 1189, 171 N. W. 704; Payne v. Dicus, 88 Iowa 423, 55 N. W. 483; Bailey v. Bailey, 94 Iowa 598, 63 N. W. 341; Patton v. Incorporated Town of Sanborn, 133 Iowa 650, 110 N. W. 1032; Jones on Evidence, Third Ed., chapter 22, section 895.

It seems to us that the evidence clearly shows that when the arrest was ordered by Varnes no offense had been committed or attempted to be committed in his presence and he was acting on information telephoned him by Miss Longmeyer. Before attempting to make the arrest Conaway had been told by Varnes (by telephone) of the information which Miss Longmeyer had given him to the effect that appellant had been at the office and taken the civil docket. Conaway started to look for appellant on the street and, not finding him, then went to the office of the justice of the peace (Varnes) and while there was told by Miss Longmeyer what had happened. Conaway knew that Varnes was not present when the docket was taken. Shortly thereafter, and on the street, he saw Rowe, called him to where he (Conaway) was in the car, and told him that he was going to arrest him for having stolen Varnes' docket. Rowe testified he told Conaway that he had not stolen the docket but that he had taken it to the office of Hugh Tamisiea and his purpose in so doing. Conaway, in answer to Rowe's statement that he had not stolen the docket, said, "Well, he [Varnes] says you did."

It appears from the record, without dispute, that Conaway at the time of the arrest knew from what Varnes had told him that no offense had been committed or attempted to be committed in the presence of the magistrate, and therefore the oral order of arrest issued by Varnes was without authority.

VII. Appellant claims that the court erred in refusing to give requested Instruction No. 1. This requested instruction in part dealt with the right of an officer to make an arrest by reason of an oral order given by the magistrate. A part of said requested instruction asked that the jury be instructed as to the right of the chief of police to arrest under the provisions of section 755.6.

Appellant in argument, in division 15, specifically calls attention to the refusal of the court to give such requested instruction and specifically calls attention to the statute, section 13470, Code of 1939, section 755.6, Code of 1946. The requested instruction was refused and an exception taken. The trial court evidently had such request in mind and sought to cover the situation by giving Instruction No. 7, which is as follows:

"The jury are instructed that if you find from the ·evidence that a public offense has been committed by the defendant, and that the said Howard Conaway had reasonable grounds for believing that the defendant had committed said public offense, then in that event the said Howard Conaway had a right to make said arrest; and you are further instructed in that event, that the said Howard Conaway had the authority to use the necessary force to effect said arrest."

Instruction No. 7 is based upon section 755.4, Code of 1946. Conaway did not claim, neither does the State in argument, that the arrest was being made under said section.

We hold that the record shows that the arrest was illegal because Conaway knew from what Varnes told him no offense had been committed in his presence, and we hold that the failure of the court to give the jury a correct statement of the law as set out in section 755.6 was reversible error. Said Instruction No. 7 does not fully or correctly present the matter involved as shown by the record. We have frequently held that where the court attempts to instruct with reference to an issue involved it is required to do so fairly and correctly. State v. Brooks, 192 Iowa 1107, 186 N. W. 46; State v. Rutledge, 135 Iowa 581, 113 N. W. 461; State v. Manning, 149 Iowa 205, 128 N. W. 345; State v. Wilson, 234 Iowa 60, 11 N. W. 2d 737. While requested Instruction No. 1 may not have been well phrased, or in the best of form, and included matters not proper for instruction, still it did call attention of the court to the matter which appellant sought to have the jury instructed upon. See, also, Sanford v. Nesbit, 234 Iowa 14, 11 N. W. 2d 695.

In connection with the foregoing, we think that it is

a rule of law in this state that the person sought to be illegally arrested has a right to resist. However, this right has certain limitations. State v. Fador, 222 Iowa 134, 268 N. W. 625; State v. Small, 184 Iowa 882, 169 N. W. 116; State v. Phillips, 118 Iowa 660, 92 N. W. 876; Snyder v. Thompson, 134 Iowa 725, 112 N. W. 239. The above-cited cases discuss the various phases of the right to resist by one who is being illegally arrested. In the case of State v. Fador, supra, the charge was that of assault with intent to commit murder. The defendant was convicted of assault with intent to do great bodily injury. The officer attempting to make the arrest had no warrant. In submitting the case to the jury the court instructed that body that if the officers did not have a right to make the arrest, or did not do so in a legal manner, they were guilty of an assault and that the person sought to be arrested had a legal right to resist. Such instructions fully explained to the jury the law in regard to the resistance which might legally be offered by a person thus unlawfully attempted to be arrested. Such instructions told the jury that if the person resisting used more force and violence than was reasonably necessary under the circumstances, then the person so resisting would become the aggressor and as such chargeable with the consequence resulting from the use of such excessive force. Such instruction was approved by this court.

In the instant case, we hold that it was the duty of the court to give an instruction to the jury advising them of appellant's right to resist and how far he could reasonably go in making such resistance, all to be given in the light of the testimony in the record upon that point.

Various other propositions have been set forth in appellant's brief. In general, we think that under the record in the case they do not constitute reversible error. Some of them have not been properly presented or argued in this court. In the case of some mentioned in appellant's brief, there was no proper offer of proof and no showing as to what the witnesses would have testified to. Furthermore, some of those set forth in various propositions have not been argued in this court—some are barely mentioned—and for that reason cannot be considered.

We think that is likewise true as to proposition No. 14, being a motion for a directed verdict. This motion was made when the State rested and was renewed after the evidence had been received. The motion was overruled and in doing so we do not think the court erred. Both motions are replete with conclusions of law, certain facts which are assumed, others not having the support of the record.

Nothing stated in the foregoing is to be considered as indicating any opinion on the part of this court as to the guilt or innocence of appellant of the specific offense charged, to wit, assault with intent to commit great bodily injury. Whether such offense has been shown is a question of fact for the jury, guided by correct and proper instructions.

In view of our holding that the case is reversed, it necessarily follows that it is to be remanded to the district court for further proceedings. In the event of a retrial, the court, having before it the evidence, should instruct the jury as to the law applicable to arrests upon oral order, and also as to the right of the defendant to resist and the extent justifiable in the resistance of an illegal arrest, all in order that the jury may have proper guidance in their deliberations as to such matters.

By reason of the errors hereinbefore set forth, the case is reversed and remanded.—Reversed and remanded.

WENNERSTRUM, C. J., and OLIVER, HALE, and GARFIELD, JJ., concur.

MULRONEY, BLISS, SMITH, and HAYS, JJ., specially concur.

MULRONEY, J. (specially concurring)—I concur in the foregoing opinion and especially with the conclusion that the record shows Conaway knew at the time of the arrest that no offense had been committed in the presence of the magistrate, Varnes. It seems to me the opinion leaves some implication that the arresting officer would be within the protection of section 755.6, Code, 1946, if no crime had been committed in the magistrate's presence but the officer who was orally ordered by the magistrate to make the arrest did not know this fact. Then, too, the opinion rather implies that the arresting officer would be within

the protection of the statute if a public offense had been committed in the magistrate's presence and sometime later the magistrate orally ordered the officer to make the arrest. I do not feel that in either instance the officer would be making an authorized arrest under the statute. Section 755.6, Code of 1946, provides:

"A magistrate may orally order a peace officer or a private person to arrest anyone committing or attempting to commit a public offense in the presence of such magistrate, which order shall authorize the arrest."

Such a statute should be strictly construed. And in the arrest of a person without a warrant the burden of proof is on the person arresting to show that the arrest was lawful. 6 C.J.S. 579, 580, section 5. Since no order for the arrest of a person who had not committed an offense in the magistrate's presence would be lawful, the officer would not be within the protection of the statute.

But in any event, I feel that the statute, properly construed, would not authorize the officer to arrest a person upon the magistrate's oral order that an offense *had been committed* in the magistrate's presence. The statute does not say that the magistrate can orally order any peace officer or any person to arrest for a crime *that has been committed* in his presence. The statute says he can orally order the arrest of "anyone *committing or attempting* to commit a public offense in [his] presence." (Italics supplied.) I think the legislative intent is expressed in the use of the present tense. The legislative intent is to supplement the power of a magistrate to arrest anyone committing a public offense in his presence by granting to the magistrate the present right to call upon a peace officer or other person present to arrest for a public offense which is being committed or attempted in the magistrate's presence.

The very fact that the statute authorizes the magistrate to orally order "a private person" to make the arrest indicates a legislative intent to allow the magistrate to give the oral arresting order at the time the offense is being committed or attempted. Surely the legislature did not mean the magistrate could tele-

phone some "private person," hours or days after a public offense had been committed in his presence, and tell that person to go out and arrest the offender. I do not believe the legislature meant to amend the general law of arrest by a private person, as found in section 755.5, by allowing a private person to make an arrest for a public offense that was not being committed in his presence.

I would hold the statute is in effect a deputizing statute; that it goes no further than to authorize the magistrate to call upon an officer or private person there present to arrest someone who is committing or attempting to commit a public offense in the magistrate's presence.

BLISS, SMITH, and HAYS, JJ., join in this special concurrence.

BLISS, J. (specially concurring)—I concur in the majority opinion except as noted herein, and in the special concurrence of Judge Mulroney, in which I join.

As I construe section 755.6, Code, 1946, the only officer or private person authorized to arrest under an oral order issued under the section is one who was present in the magistrate's office when the offense was being committed or attempted. Since Conaway knew he was not present, he must be presumed to know that he had no right to attempt to arrest the defendant under the oral order.