Brice M. HALL, Defendant
Below–Appellant,

v.

STATE of Delaware, Plaintiff
Below–Appellee.

No. 285, 2007.

Supreme Court of Delaware.

Submitted: May 5, 2010.
Decided: Aug. 13, 2010.

John R. Garey, Esquire (argued) of John R. Garey, PA, Dover, Delaware, for appellant.

John Williams, Esquire (argued) of the Department of Justice, Dover, Delaware, for appellee.

Before HOLLAND, JACOBS, and RIDGELY, Justices.

RIDGELY, Justice:

Defendant-below Brice M. Hall appeals from his Superior Court conviction of assault in a detention facility. Hall makes two arguments on appeal. First, he contends the Superior Court committed plain error by not removing an impaneled juror employed with the Delaware Department of Corrections and assigned to the same institution as Hall. Second, he contends that the Superior Court committed plain error by not conducting an adequate *voir dire* of the juror to establish the details of the juror member's employment and previous contacts with Hall. It is undisputed that the juror worked as a correctional officer on Hall's tier within the prison, had direct oversight of Hall during his imprisonment, and would have delivered by hand any mail addressed to Hall. We conclude that the inherent interest of the juror in the outcome of this case as a correctional officer responsible for the direct supervision of Hall requires a new trial. Accordingly, we reverse.[1]

### Facts and Procedural History

On February 15, 2006, Ryan Neeman pled guilty to a felony offense in the Kent County Superior Court. After his plea, he was taken downstairs to the prisoner lockup while awaiting transport to prison. Neeman was wearing street clothes, rather than a prison uniform, including white New Balance tennis shoes. At the time, Neeman was handcuffed to another prisoner in the detention cell. Hall was an inmate at the Delaware Correctional Center[2] and was also in the lockup. Neeman claims Hall told him he could not wear his sneakers at the prison, and demanded Neeman give him the shoes. When Neeman did not comply, Hall punched Neeman in the left eye, causing Neeman to fall to the ground. As a result of the assault, Neeman suffered a fractured jaw. Hall later admitted punching Neeman, but he vehemently denied it was during an attempted robbery of Neeman's shoes. He testified it was in self-defense against Neeman spitting on him. Hall was arrested and subsequently indicted on charges of assault in a detention facility and robbery in the first degree. When the matter proceeded to trial before a jury, a correctional officer was seated as Juror Number 11.

On the juror questionnaire, Juror Number 11 disclosed his employment as a correctional officer, but during *voir dire*, did not respond to the question of whether any juror members knew Hall. After trial began and the first witness testified, the trial judge was alerted to the fact that Juror Number 11 was a correctional officer. The trial judge conducted additional *voir dire* of the juror but *voir dire* was limited to Juror Number 11's knowledge of and relationship with the other correctional officers who would testify. The trial judge did not ask Juror Number 11, nor did defense counsel request him to ask, if he had any contact with Hall in his capacity as a correctional officer. Because Juror Number 11 did not know the officers who would testify, the trial judge allowed him to remain on the jury.

---

1. It is therefore unnecessary to address Hall's second contention concerning the adequacy of the *voir dire* by the trial court.

2. The Delaware Correctional Center was renamed The James T. Vaughn Correctional Center on May 15, 2008 in honor of the late Delaware Commissioner of Correction and Delaware State Senator James T. Vaughn. *See* 76 Del. Laws c. 232.

Hall testified in his own defense. He acknowledged that he was a convicted felon, including a prior second degree assault conviction. Hall admitted that he punched Neeman, but claimed it was in self-defense after Neeman spit in his face. Hall specifically denied attempting to remove Neeman's sneakers. The jury acquitted Hall of robbery in the first degree, but convicted him of Assault in a Detention Facility. Hall was declared an habitual offender and was sentenced to ten years incarceration.

Hall appealed to this Court, asserting that he was denied his right to be tried by a fair and impartial jury. After filing his Opening Brief, Hall moved to remand this case to the Superior Court for an evidentiary hearing on the potential bias of Juror Number 11. This Court granted the motion.

### Evidentiary hearing on remand

At the hearing on remand, Juror Number 11 testified, and his employment records confirmed, that in fact he worked on Hall's particular prison tier four times prior to the trial and in the building that housed Hall eight times before the start of the trial. Juror Number 11 testified that during each of his assignments to Hall's tier, his job included conducting "phone punches" every half hour. A "phone punch" involves the correctional officer looking into each individual's inmate's cell. It can be reasonably inferred that since Juror Number 11 worked four eight-hour shifts on the tier where Hall was housed, Juror Number 11 looked into Hall's cell on at least 64 different occasions. Juror Number 11 further explained that when working on Hall's tier, he was also responsible for handing out the mail. In doing so, he would read the names on the envelopes and then handed the mail to the corresponding inmate. Despite the assignment to Hall's tier and building, Juror Number 11 said that he did not recall any specific interaction with Hall prior to the trial. He explained that due to the large number of inmates, correctional officers typically only become aware of particular inmates if they have behavioral or disciplinary problems. According to Juror Number 11, Hall did not demonstrate either behavioral or disciplinary problems. Juror Number 11 acknowledged that after the trial, he had a direct conversation with Hall on his tier in which he confirmed that he was a juror in Hall's trial.

Hall testified that he knew Juror Number 11 prior to being incarcerated because of ten separate interactions when that juror worked at a Wawa store located in Dover, Delaware. Juror Number 11 acknowledged that he had worked at Wawa immediately prior to his employment at the Delaware Correctional Center. Hall further testified to one particular occasion in which Juror Number 11 and Hall had a conversation while Hall was awaiting trial concerning an interaction they had at Wawa. Juror Number 11 denied having had this conversation.

Accepting Juror Number 11's testimony, the Superior Court found that the juror "did not know or have contact of any significance with Defendant at any stage during Defendant's pretrial or trial proceedings." The Superior Court concluded that Hall received a fair and impartial trial and that Juror Number 11 "was not impermissibly biased against Defendant, and did not infect the jury in any way." This appeal followed.

### Discussion

■ Hall contends that the Superior Court erred by not *sua sponte* removing Juror Number 11 upon learning at trial that he was employed as a correctional officer. After the Superior Court learned Juror Number 11 was employed as a correctional officer, it conducted additional *voir dire* and determined that Juror Num-

ber 11 did not know or work for any of the correctional officers scheduled to testify in Hall's case. At the point during the trial at which Hall contends the Superior Court committed plain error, the only fact indicating a potential bias was Juror Number 11's employment as a correctional officer. Essentially, Hall argues for a new rule that employment as a correctional officer, without more, establishes juror bias *per se*, precluding impartial service on a jury. We disagree that the trial court's determination of juror bias should turn solely on an individual's employment classification. Rather, the appropriate inquiry is whether a prospective juror "can render an impartial verdict based on the evidence developed at trial in accordance with the applicable law." [3]

The United States Supreme Court has not excluded persons from serving as jurors based upon employment.[4] In *United States v. Wood*, the Supreme Court held that a potential juror's employment with the federal government, without more, was not sufficient to establish juror bias. "We think that the imputation of bias simply by virtue of governmental employment, without regard to any actual partiality growing out of the nature and circumstances of particular cases, rests on an assumption without any rational foundation." [5] Disqualifying individuals based upon broad categories of employment does not further the constitutionally-mandated right to a fair and impartial jury.

The overwhelming majority of jurisdictions that have addressed the issue of juror disqualification based upon employment have concluded that law enforcement officials should not be *per se* ineligible to serve as jurors.[6] Some courts adhering to the minority position of *per se* ineligibility for law enforcement officials have done so on the basis of a statutory disqualification.[7] Other courts adopting the minority position have held that the presence of law-enforcement officers on a

---

**3.** *Hughes v. State*, 490 A.2d 1034, 1041 (Del. 1985) (citing *Parson v. State*, 275 A.2d 777, 780 (Del.1971)).

**4.** *See, e.g., Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 94 L.Ed. 734 (1950); *Frazier v. United States*, 335 U.S. 497, 511, 69 S.Ct. 201, 93 L.Ed. 187 (1948); *United States v. Wood*, 299 U.S. 123, 149, 57 S.Ct. 177, 81 L.Ed. 78 (1936).

**5.** *United States v. Wood*, 299 U.S. at 149, 57 S.Ct. 177.

**6.** *United States v. Morales*, 185 F.3d 74 (2d Cir.1999); *United States v. McCord*, 695 F.2d 823 (5th Cir.1983); *Marshall v. United States*, 355 F.2d 999 (9th Cir.1966); *Nick v. United States*, 122 F.2d 660 (8th Cir.1941); *Fordham v. State*, 513 So.2d 31 (Ala.Crim.App.1986); *State v. Hill*, 174 Ariz. 313, 848 P.2d 1375 (1993); *Buchanan v. State*, 214 Ark. 835, 218 S.W.2d 700 (1948); *People v. Yuen*, 32 Cal. App.2d 151, 89 P.2d 438 (1939); *State v. Clark*, 164 Conn. 224, 319 A.2d 398 (1973); *Cash v. State*, 224 Ga. 798, 164 S.E.2d 558 (1968); *State v. Rowe*, 238 Iowa 237, 26 N.W.2d 422 (Iowa, 1947); *Bowling v. Commonwealth*, 942 S.W.2d 293 (Ky.1997); *State v. Robinson*, 353 So.2d 1001 (La.1977); *State v. Heald*, 443 A.2d 954 (Me.1982); *Hopkins v. State*, 24 Md.App. 53, 329 A.2d 738 (Md.Ct. Spec.App.1974); *Commonwealth v. Ascolillo*, 405 Mass. 456, 541 N.E.2d 570 (1989); *People v. Lauder*, 82 Mich. 109, 46 N.W. 956 (1890); *State v. Radi*, 176 Mont. 451, 578 P.2d 1169 (1978); *State v. Lewis*, 50 Nev. 212, 255 P. 1002 (1927); *State v. Ternes*, 259 N.W.2d 296 (N.D.1977); *Parks v. Cupp*, 5 Or.App. 51, 481 P.2d 372 (1971); *Commonwealth v. Lee*, 401 Pa.Super. 591, 585 A.2d 1084 (1991); *State v. Cosgrove*, 16 R.I. 411, 16 A. 900 (1889); *Bryant v. State*, 264 S.C. 157, 213 S.E.2d 451 (1975); *Williams v. State*, 167 Tex.Crim. 503, 321 S.W.2d 72 (Tex.Crim.App. 1958); *State v. Van Dam*, 554 P.2d 1324 (Utah 1976); *State v. Parker*, 104 Vt. 494, 162 A. 696 (1932); *McGeever v. State*, 239 Wis. 87, 300 N.W. 485 (1941).

**7.** *Lindsay v. State*, 97 Fla. 701, 122 So. 1 (1929); *Fennell v. State*, 396 P.2d 889 (Okla. Crim.App.1964); *State v. Johnson*, 123 S.C. 50, 115 S.E. 748 (1923).

criminal jury denies a defendant his constitutional right to a fair and impartial jury.[8] We agree with the majority view and hold that law enforcement officers are not automatically disqualified from serving as jurors in criminal cases.[9] Accordingly, the Superior Court did not commit plain error when it did not remove Juror Number 11 simply because he was a correctional officer.

■ But the remand hearing reveals that this case involved more than mere employment as a correctional officer. Juror Number 11 was a correctional officer in the same facility, building, and tier where Hall was housed both before and after the trial. Juror Number 11 was responsible for security on Hall's tier and had direct contact with him on a regular basis. Following the trial, Juror Number 11 had a conversation with Hall in which he confirmed that he served as a juror in Hall's trial. Thus, his direct supervision of Hall continued after the trial.

■ The accused's right to a trial by a jury of his peers is fundamental to our criminal justice system.[10] An essential ingredient of that right is that the jury consist of impartial or indifferent jurors.[11] This Court has held that "if only one juror is improperly influenced, a defendant in a criminal case is denied his Sixth Amendment right to an impartial jury."[12] The United States Supreme Court has held that the presence of a biased juror introduces a structural defect that is not subject to a harmless error analysis.[13] As the United States Supreme Court held in *In Re Murchison*[14]:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end ... no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered.[15]

The circumstances of this case and the relationship between Juror Number 11 and Hall, as acknowledged by that Juror, establish an impermissible probability of unfairness because of the Juror's interest in the outcome of the case. As a correctional officer, Juror Number 11 was responsible for preventing violence on Hall's tier, which in turn promotes a less hostile work environment and the personal safety of the officer. Convicting Hall of assault in a detention facility serves as a deterrent for future hostile activity in the building and tier where Hall was housed and Juror Number 11 worked. Considering the circumstances and relationships between Hall and Juror Number 11 as revealed by the hearing upon remand, we conclude that the probability of unfairness in this case requires a new trial.

---

8. *Tate v. People*, 125 Colo. 527, 247 P.2d 665 (1952); *State v. Butts*, 349 Mo. 213, 159 S.W.2d 790 (1942); *State v. West*, 157 W.Va. 209, 200 S.E.2d 859 (1973).

9. *See generally*, 72 A.L.R.3d 895.

10. *Hughes v. State*, 490 A.2d 1034, 1040 (Del. 1985) (citing *Irvin v. Dowd*, 366 U.S. 717, 721, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)).

11. *Hughes*, 490 A.2d at 1040.

12. *Styler v. State*, 417 A.2d 948, 951–52 (Del. 1980).

13. *Banther v. State*, 823 A.2d 467 (Del.2003) (citing *Arizona v. Fulminante*, 499 U.S. 279, 307–310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

14. 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

15. *Id.* at 136, 75 S.Ct. 623.

## Conclusion

The judgment of the Superior Court is **REVERSED** and this matter is **REMANDED** for a new trial.