# IN THE SUPREME COURT OF IOWA

No. 90 / 04-0396

Filed May 19, 2006

**STATE OF IOWA**,

Appellee,

vs.

**THOMAS LEONARD CAMPBELL**,

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Lawrence H. Fautsch, Judge.

Defendant convicted of four counts of burglary as an habitual offender appeals challenging an alleged denial of his right to speedy trial and limitations placed on his cross-examination of a State's witness. The court of appeals affirmed. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, and Joel Dalrymple, Assistant County Attorney, for appellee.

**CARTER, Justice.**

Defendant, Thomas Leonard Campbell, convicted of four counts of burglary as an habitual offender, appeals, challenging an alleged denial of his right to a speedy trial and the district court's limitation of his cross-examination of a State's witness.[1]  The court of appeals affirmed defendant's conviction.  After reviewing the record and considering the arguments presented, we find that defendant's right to a speedy trial was not violated.  We do conclude, however, that the district court committed reversible error by improperly restricting his cross-examination of a State's witness.  We vacate the decision of the court of appeals.  The district court's judgment on the burglary charges is reversed and the case remanded to the district court for a new trial on those charges.

On June 14, 2003, a neighbor of Hope Voshel, defendant's girlfriend, heard glass breaking in the vicinity of Voshel's residence.  She had recently observed defendant arriving at the residence.  The neighbor approached Voshel's home and observed that a window had been broken.  At about this time, she witnessed defendant driving away from the residence.  She then telephoned Voshel, who was at her brother's house.  The neighbor informed Voshel of the broken window and defendant's apparent involvement in the matter.

Voshel returned home to inspect the broken window.  She then went to the police station to report what had happened and defendant's involvement in the incident.  While she was at the police station, she received a cell phone call from defendant in which he admitted that he had broken the window.  Voshel told the police of defendant's conduct with regard to her broken window and also informed them that defendant had

---

[1]Defendant was also convicted of the offense of criminal mischief in the third degree. We will dispose of that conviction summarily at the conclusion of our decision.

been involved in four recent burglaries in Waterloo involving a jewelry store, a clothing store, a hair salon, and an antique gallery. She told police that defendant had shown her a television set he had stolen from the hair salon.

After speaking with Voshel, the police became aware that defendant was at the home of Tangala Saffold. They went to that residence and placed defendant under arrest. Saffold informed them that defendant and Voshel occasionally stayed at her home, and when this occurred, they occupied one particular room. At the time of defendant's arrest, police officers seized a coat identified as belonging to defendant. In the pockets, they discovered a mask and a pair of gloves. Additionally, acting with the consent of Saffold, the police searched the room in which defendant and Voshel sometimes stayed and seized a fur coat, a bag of shoes, several antique books, and an antique radio, all of which were later identified as items taken in recent burglaries. Later the same day, Voshel delivered to the police several items of jewelry, which she claimed defendant had taken in a burglary at Newton's Jewelry Store in Waterloo. In a trial information filed on June 27, 2003, defendant was charged with four counts of burglary involving the jewelry store, clothing store, hair salon, and antique gallery. He was also charged with malicious mischief in the third degree as a result of allegedly breaking a window at Voshel's home. He entered a plea of not guilty on all counts and demanded a speedy trial.

The speedy-trial deadline was September 25, 2003. Trial of all charges was initially scheduled for September 2. At the request of defendant's counsel, it was rescheduled for September 9. On September 5 counsel for defendant advised the court that time was required to hear certain undisclosed legal issues to be raised by him. Although those issues were ultimately never asserted, the trial date was delayed to September 16 in anticipation that they would. On September 8 the State filed a notice of

additional minutes of testimony, listing several new witnesses against defendant. On September 10 defendant requested in writing that the court remove his court-appointed counsel, David Fiester. On September 12 defendant filed a pro se motion to suppress evidence of the items seized at Tangala Saffold's residence. On September 13 attorney Fiester noted that he had a conflict of interest with a jailhouse informant listed as a witness against defendant in the additional minutes of testimony that had recently been filed. He requested permission to withdraw for this reason.

A hearing was held on September 15, 2003. With regard to the matter of defendant's request for the removal of his court-appointed counsel, the presiding judge asked defendant whether he wanted to be represented by attorney Fiester. Defendant replied that he did not. In response to that answer, the judge told him, "Okay. Now you understand, I'm not saying what I'm going to do, but if you get a new lawyer your trial is going to be continued for probably three, four weeks. You can't have a new lawyer come in and be ready to go to trial in a week." Defendant responded by asking how long it would take to receive a ruling on his motion to suppress because he claimed that he was prepared to defend himself. The following colloquy then took place:

> THE COURT: Well, I mean, the only problem with that, sir, is you filed a motion to suppress. We can't have a motion to suppress before the trial tomorrow. That's just humanly impossible. And representing yourself, I have yet to see anybody who has done that effectively. Even people who have a college education and extensive education past that and understanding of the Rules of Criminal Procedure and the laws.
>
> What I'm willing to do is grant your request to have a new attorney appointed to represent you because of the conflict that exists between – or the predicament that Mr. Fiester [defendant's court-appointed attorney] is in. So I'm willing to appoint a new attorney to represent you, but that's going to necessitate continuing your trial. If you want to represent yourself your trial is going to have to be continued too because

there would have to be a hearing on your motion to suppress because that can't be held today. It can't be held before your trial tomorrow.

THE DEFENDANT: Okay. Well, why is it being assessed to me when he's the one that – the prosecuting attorney filed a trial information on September 8th when he had this information on June 14th?

THE COURT: The trial information can be filed and amended any time up to and including the date of the trial.

And the alternative is to either allow the amended minutes or to grant a continuance. If the amended minutes are granted, if that's allowed, then the remedy for a defendant is to have the trial continued, but you'd be requesting the trial be continued plus there's a problem with your attorney who would run into an ethical problem because you don't want him to represent you since he represents a guy that's gonna testify against you. And presumably the guy who's going to testify against you probably doesn't want him to represent him because he represents you as well. So like I said, you know, I'll get you a new lawyer, but —

THE DEFENDANT: So if I drop my request for a motion of – to suppress and I state that I want to go to trial tomorrow and represent myself can I do that?

THE COURT: Well, you may be able to, but I think it wouldn't be wise. . . .

THE DEFENDANT: I'll take my chances. I'm prepared to come to trial tomorrow. . . .

THE COURT: I'll let you represent yourself, but it won't be tomorrow. I'll appoint a standby attorney to be present in case you have questions that have to go through that lawyer. And I'll reset your trial. I'll give you until the end of the week to rethink representing yourself because the standby counsel won't represent you. They'll only be there if there's a problem. Otherwise —

THE DEFENDANT: I'm fine with that.

THE COURT: Otherwise it would be up to you to represent yourself, to ask the potential jurors the questions that they need to be asked, to determine which of the people will serve on the jury, to make objections to questions in an appropriate form, to determine what the jury instructions should say, whether you have any objections to those, all those decisions would have to be made on your own. Standby counsel wouldn't have anything to do with that.

THE DEFENDANT: All right.

THE COURT: So what I'll do is indicate that Mr. Fiester is allowed to withdraw; I'll appoint a standby attorney; I'll reset

your trial; I'll indicate that you're going to represent yourself and you have until the end of the week, which would be the 19th, to reconsider that because I think to be – I don't know anything about you, sir, but I think it would be a silly, foolish decision to attempt to represent yourself on a case that you could face 62 years in prison on. There's a mandatory minimum three on each of the habituals. If all those are run consecutive you may have a mandatory minimum of 12 years in prison before you'd be eligible for parole. And that's my own opinion and you don't have to listen to that. I'll do an order in conformity with what we've talked about. Do you want to have a hearing on your motion to suppress before your trial is scheduled in a couple of weeks?

THE DEFENDANT: Yes.

THE COURT: Okay.

THE DEFENDANT: Wait a minute. If my trial is going to be scheduled in a couple of weeks what's the purpose of me going pro se?

THE COURT: That's kind of what I'm trying to tell you, sir. We can't have a standby attorney for you tomorrow morning. That just can't be done. And so your trial is going to have to be reset.

THE DEFENDANT: So if I drop my motion to suppress then I can go to trial tomorrow?

THE COURT: No, sir. You have to have a standby attorney to help you in this case. There won't be an attorney available tomorrow.

THE DEFENDANT: So I'm going to have to end up having to wait for an attorney anyway?

THE COURT: Well, what I'm trying to tell you is you ought to have an attorney, but if you insist on representing yourself I'll appoint somebody as a standby attorney.

THE DEFENDANT: My goal was to go to trial tomorrow.

THE COURT: Well, you're not going to go to trial tomorrow.

THE DEFENDANT: Well, then I withdraw my request to be my own lawyer because I might as well wait for a lawyer.

THE COURT: All right. So I'll appoint another attorney to represent you . . . .

On the day following the September 15 hearing, the district court allowed attorney Fiester to withdraw as defendant's counsel and appointed attorney Tammy Banning to represent defendant. In this order, the trial

was rescheduled for October 7. Attorney Banning met with defendant at the jail on September 23 and, after introducing herself, was told by defendant that he did not wish her to represent him. She filed a motion to withdraw, and defendant appeared in court in support of that motion on October 3. Attorney Banning's motion to withdraw was granted on the ground of irreconcilable differences with her client, and Brandon Adams was appointed to represent defendant. In the order approving this change of counsel, defendant's trial was rescheduled for November 4. The trial actually commenced on November 5, 2003, due to the illness of defendant's new counsel.

At the trial Hope Voshel testified for the State and indicated that defendant had admitted to her that he had committed the burglaries with which he was charged. During her cross-examination, defendant's counsel attempted to question her concerning an accusation that defendant had made implicating Voshel's nephew, Justin, as the perpetrator of the burglaries and defendant's threat to turn Justin in to the police. That confrontation supposedly took place on the night before the events surrounding Voshel's broken window and her trip to the police station to accuse defendant of the burglaries. The trial court sustained the State's objection to this testimony and refused to allow defendant's counsel to pursue it in front of the jury. Additional facts will be discussed in our consideration of the legal issues presented.

### I. *The Speedy-Trial Issue.*

A. *Scope of review.* We review a trial court's ruling on a motion to dismiss based on speedy-trial grounds for an abuse of discretion. *State v. Nelson*, 600 N.W.2d 598, 601 (Iowa 1999); *State v. Todd*, 468 N.W.2d 462, 470 (Iowa 1991). However, that discretion is a narrow one, as it relates to

circumstances that provide good cause for delay of the trial. *State v. Winters*, 690 N.W.2d 903, 907-08 (Iowa 2005).

B. *Speedy trial provisions of Iowa Rule of Criminal Procedure 2.33(2)(b).* After defendant's trial was continued beyond the original ninety-day speedy-trial deadline of September 25, his counsel filed a motion to dismiss the prosecution based on a denial of speedy trial. Defendant later filed a pro se motion asserting the same request. On the opening day of trial, immediately prior to the jury selection, the district court denied those motions in a ruling that was dictated into the record. The substance of the ruling was that the delay in trial was attributable to the defendant. Defendant urges on appeal that this ruling was in error. In particular he asserts that the delay caused by the withdrawal of attorney Fiester was not attributable to defendant but, rather, was attributable to the State's late filing of additional minutes of testimony that produced a conflict for Fiester.

Iowa Rule of Criminal Procedure 2.33(2)(*b*) provides:

> If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

In applying this rule, we have recognized that, if trial does not commence within ninety days of the filing of the charging instrument, the charge must be dismissed "unless the State proves (1) defendant's waiver of speedy trial, (2) delay attributable to the defendant, or (3) 'good cause' for the delay." *Nelson*, 600 N.W.2d at 600; *accord Winters*, 690 N.W.2d at 908. In determining whether there is good cause for a delay, we focus only on one factor, the reason for the delay. *Nelson*, 600 N.W.2d at 601. The attending circumstances bear on that inquiry only to the extent they relate to the sufficiency of the reason itself. *Id.*

In holding that the State showed sufficient reason for the delay in the present case, the court of appeals stated:

> Defendant's August 28 request for a continuance from the original trial date of September 2 caused seven days of delay, as the trial was rescheduled to September 9. This delay must be attributed to defendant. Defendant's September 5 request for further proceedings caused seven more days of delay, as trial had to be rescheduled to September 16, even though defendant later withdrew the request for further proceedings. This delay must also be attributed to defendant. These two delays, which are attributable to defendant, caused fourteen days of delay.
>
> Defendant may not cause delay and later take advantage of that delay. Thus, we extend defendant's original speedy trial deadline of September 25 by fourteen days; the result being defendant's speedy trial deadline was actually October 9.
>
> Trial would have occurred on October 7, which was within the recalculated speedy trial period. However, defendant and his attorney had "irreconcilable differences," which resulted in defendant's attorney seeking to withdraw and defendant agreeing that the attorney should withdraw. Thus, the delay from the October 7 trial date to November 4 must also be attributed to defendant. . . . Therefore, we conclude that with certain delays properly attributed to defendant and good cause, defendant's trial occurred within the speedy trial period.

The court of appeals did not consider it necessary to determine whether the delay caused by attorney Fiester's withdrawal was attributable to the defendant or to the State.

We are not persuaded that the court of appeals employed the proper rationale in reaching its conclusion on the speedy-trial issue. In considering whether a delay of trial beyond the ninety-day period provided in Iowa Rule of Criminal Procedure 2.33(2)(*b*) warrants dismissal of the prosecution, we do not deem it appropriate to identify a certain number of days related to events that are believed to have impeded the progress of the case, attribute those events to the defendant or to other good cause, and then extend the speedy-trial deadline by a like number of days. Evaluation of the delay may not be made in such a mechanical fashion because it is

not accurate to assume that pretrial events consuming a measurable amount of time will force a delay in the trial of a like amount of time. The decisive inquiry in these matters should be whether events that impeded the progress of the case and were attributable to the defendant or to some other good cause for delay served as a matter of practical necessity to move the trial date beyond the initial ninety-day period required by the rule. In making that inquiry in the present case, we conclude that this question must be answered in the affirmative.

Defendant may not attribute the period of delay caused by the withdrawal of attorney Fiester to the State's addition of a new witness to the minutes of testimony that worked a conflict for Fiester because defendant had actively sought Fiester's removal as his counsel for other reasons prior to the time that the alleged conflict of interest had surfaced. It is impossible to conclude from the present record that there would not have been a change of counsel irrespective of the alleged conflict of interest. The delay required for Fiester's replacement to become familiar with the case was the precipitating cause of moving the trial date beyond the original ninety-day speedy-trial period. Thereafter, defendant's own conduct was a substantial factor in the withdrawal of his new lawyer, necessitating yet another change in counsel and an additional period of time for new counsel to achieve familiarity with the case. The time allowed in each instance for counsel to gain familiarity with the case was well within the discretion of the trial court. In considering the totality of the events that occurred, the delay in bringing defendant to trial was for reasons that preclude a finding that his speedy-trial rights were violated.

## II. *Exclusion of Evidence Relating to Witness Bias.*

Hope Voshel testified on behalf of the State. She indicated that, on the night defendant broke out the windows in her apartment, she had

stayed at her brother's home because she and defendant had argued. In questioning her as to this matter on cross-examination, the following occurred:

> Q. Now, that argument that you had with Mr. Campbell, was your nephew's name, Justin, brought up? A. Yes, sir.
>
> Q. Now your nephew Justin, is he in a training school up in Eldora?

At this point, the State objected as follows:

> PROSECUTING ATTORNEY: Your Honor, I'm going to object. I believe it's essentially 404(*b*) evidence that is not relevant to this case.

The colloquy then took place outside of the jury, and defendant made the following offer of proof:

> DEFENDANT'S COUNSEL: Your Honor, the substantive facts that I believe that we will get from Ms. Voshel herself is that the argument that was had between Mr. Campbell and Ms. Voshel was concerning this nephew in particular by the name of Justin in conjunction with other nephews accusing him of doing something because they were, in fact, confronted by Mr. Campbell himself as that they shouldn't be doing it, meaning the burglaries themselves, and so that's the information that we expect to get from Ms. Voshel, that she will testify that Mr. Campbell, in fact, indicated that these nephews shouldn't be doing this and that they believed that they were, that he was going to turn them in, and, in fact, reported this to Ms. Voshel. That's what I believe at least the substantive facts are that I believe will come out.

The district court sustained the State's objection, stating its ruling as follows:

> Nevertheless, if the only evidence that these other individuals may be responsible for these crimes is the defendant's statement of such to this—to Ms. Voshel, then I do believe that it's nothing more than mere suspicion and there are no substantive facts, and so I agree with the state in its analysis. . . . I further agree with the state that this—that this is hearsay as it stands and for both those reasons, I will not allow the defendant to get into that . . . .

In seeking to uphold the district court's ruling on appeal, the State relies on two propositions. First, it urges that Iowa Rule of Evidence 5.404(*b*) applies so as to exclude the proffered evidence of other bad acts and, second, that evidence offered by a defendant tending to incriminate another must be confined to substantive facts and create more than a mere suspicion that another person committed the offense. Defendant argues that neither of these theories justifies the denial of cross-examination of Voshel designed to show her bias as a result of defendant's intention to turn her nephew or nephews in for the same burglaries with which he was charged. We agree.

Defendant is correct in contending that rule 5.404(*b*) has no application to the present evidentiary problem. Perhaps some of the blame for the State's reliance on that rule is attributable to unnecessary language contained in *State v. Roth*, 403 N.W.2d 762 (Iowa 1987). In *Roth* we held that a second-degree murder conviction could not be used to impeach a witness under a rule of criminal procedure that, at the time, limited impeachment based on prior convictions to only those offenses showing dishonesty or false statements. In making that determination, an unnecessary reference was made to Iowa Rule of Evidence 404(b) (now 5.404(*b*)), and with respect thereto, we stated:

> Although the principle codified in Iowa Rule of Evidence 404(b) has surfaced frequently with respect to the conduct of accused persons in criminal trials, this rule is equally applicable to witnesses generally.

*Roth*, 403 N.W.2d at 765. This was clearly a misstatement of the applicability of rule 5.404(*b*). It is not a rule pertaining to witnesses, but, rather, a rule pertaining to evidence of past conduct in order to prove subsequent conduct. Moreover, it only relates to proof of the conduct that is at issue in the case. *See United States v. Morano*, 697 F.2d 923, 926

(11th Cir. 1983) (evidence of extraneous bad acts of those not on trial do not implicate the policy of Federal Rule of Evidence 404(b)); *United States v. Krezdorn*, 639 F.2d 1327, 1332-33 (5th Cir. 1981) (same).

The second proposition on which the State relies is misapplied. As the State notes, we have previously determined that evidence offered by a defendant tending to incriminate another must be confined to substantive facts and create more than a mere suspicion that such other person committed the offense. *State v. Wilson*, 406 N.W.2d 442, 447 (Iowa 1987); *State v. Harrington*, 349 N.W.2d 758, 761 (Iowa 1984). We are satisfied, however, that this was not the primary purpose sought to be accomplished through the cross-examination of Voshel. The evident purpose of the attempted cross-examination was to show bias in the sense that the witness was motivated to protect her nephews from defendant's accusations and intentions to inform the police. As stated by a leading evidence text:

> Case law recognizes the slanting effect on human testimony of the witness's emotions or feelings toward the parties or the witness's self-interest in the outcome of the case. Partiality, or any acts, relationships, or motives reasonably likely to produce it, may be proved to impeach credibility. . . . In criminal cases the defendant has a qualified constitutional right to show the bias of government witnesses.

1 John W. Strong, *McCormick on Evidence* § 39, at 144-45 (5th ed. 1999) (citing *Davis v. Alaska*, 415 U.S. 308, 316-18, 94 S. Ct. 1105, 1110-11, 39 L. Ed. 2d 347, 354-55 (1974)) (footnotes omitted). In *State v. Rowe*, 238 Iowa 237, 26 N.W.2d 422 (1947), this court reversed a criminal conviction in which the trial court limited cross-examination of a state's witness on matters aimed at affecting the credibility of a witness. *Rowe*, 238 Iowa at 242, 26 N.W.2d at 425. In so doing, we stated:

> We hold that cross-examination along the line of that offered should have been permitted as bearing on the interest and activities of witness, Conaway, and we think that the court

erred in so ruling. It is a well-established rule of law that in a criminal case the ill-will or hostility of a witness testifying against one charged with the commission of a crime may be shown and that it is proper to do so by cross-examination.

Such evidence may be considered by the jury in testing the credibility of such witness.

*Id.*

Applying these principles to the issue now before us, we are convinced that the district court erred in limiting the cross-examination of Hope Voshel on the subject of defendant's accusation of her nephews. If the facts were as suggested in defendant's offer of proof, they would provide a plausible motive for Voshel to attribute guilt for the burglaries to defendant in order to protect her nephews. This would not be any less the case because the defendant was the source of her knowledge of the nephews' involvement and defendant's intention to turn them in.

Voshel was a critical witness for the State, testifying to admissions by the defendant concerning the burglaries and identifying some of the stolen property as having been under defendant's control. Her credibility was certainly not beyond reproach. She provided an entirely unsatisfactory explanation of the source of the jewelry that she produced for the police and attributed to a burglary by defendant.[2] We are convinced that the trial court's restriction of the cross-examination of Voshel produced a sufficiently high potential for prejudice that defendant should be afforded a new trial.

---

[2]Her testimony in that regard was as follows:

Q. Where did you get this jewelry from? A. From the back of a building.

Q. In the back of what? A. A building.

Q. How did you know this jewelry was there? A. It been put there.

. . . .

Q. Who put it there, do you know? A. No.

Q. How did you know that that jewelry was there? A. I been told.

Q. Who told you it was there? Ms. Voshel, who told you that the jewelry was there? A. A guy.

Q. Who? A. A guy.

Q. Who is it? A. I don't know sir.

### III. *Ineffective Assistance of Counsel.*

Because the issue might again arise in further proceedings in the case, we consider defendant's contention that his trial counsel was ineffective in failing to seek suppression of the evidence obtained in the search conducted at Tangala Saffold's residence. We are satisfied that the record on direct appeal is sufficient to resolve that legal issue at this stage.

Defendant, as a frequent overnight guest at Saffold's home, enjoyed an expectation of privacy in the room where he kept some personal belongings. That expectation of privacy, however, is applicable only to the unwarranted actions of government actors. It does not ensure the guest's possessions will not be disturbed by the host and those persons for whom the host allows entry. *Minnesota v. Olson,* 495 U.S. 91, 99, 110 S. Ct. 1684, 1689, 109 L. Ed. 2d 85, 94 (1990); *United States v. Oates,* 173 F.3d 651, 656 (8th Cir. 1999); *United States v. Wright,* 971 F.2d 176, 180 (8th Cir. 1992). A motion to suppress the evidence obtained at Saffold's residence would have been unavailing. Consequently, counsel's failure to file such a motion did not constitute ineffective assistance.

We have considered all issues presented and conclude that the judgments of conviction on the four burglaries must be reversed. Consequently, the decision of the court of appeals is vacated. Because the State has prevailed on the only issues affecting the conviction for criminal mischief in the third degree, that conviction is affirmed. The case is remanded to the district court for further proceedings not inconsistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**