# IN THE COURT OF APPEALS OF IOWA

No. 15-1180
Filed September 28, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROLAND RICARDO ANDERSON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

The defendant appeals from his convictions for attempted murder, willful injury causing bodily injury, intimidation with a dangerous weapon, going armed with intent, and possessing a firearm as a felon. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., McDonald, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**BLANE, Senior Judge.**

Following a jury trial and guilty verdict, Roland Ricardo Anderson filed a motion to dismiss asserting a violation of the one-year speedy-trial requirement in Iowa Rule of Criminal Procedure 2.33(2)(c). After a hearing, the trial court denied the motion. Following sentencing, Anderson filed a timely notice of appeal. On direct appeal, he argues: (1) the trial court erred in denying his motion to dismiss for violation of his one-year speedy-trial rights; (2) his defense counsel was ineffective for failing to object to a number of jury instructions and verdict forms; and (3) at sentencing, the court impermissibly referenced the ongoing gun-control debate before announcing its decision to impose consecutive sentences.

**I. Procedural Background.**

The State filed a trial information on August 30, 2012, charging Anderson with attempted murder, willful injury causing bodily injury, intimidation with a dangerous weapon, going armed with intent, and possessing a firearm as a felon. Anderson was arraigned on September 13. Trial was originally set for November 6.

On October 23, defense counsel moved for a continuance, asking for time to "finalize discovery and identify issues," as well as moving to stay the proceedings pending a competency evaluation of Anderson. On November 6, the trial court entered an order granting the defendant's motion and staying the proceedings while competency was being assessed. On November 30, the court ordered a psychiatric examination at defense counsel's request. The competency hearing was continued numerous times. When it was finally held on

February 15, 2013, defense counsel withdrew the motion for a competency hearing because the examining expert had concluded that Anderson was "competent to stand trial." By order on February 19, the court lifted the stay and trial was set for February 26.

On February 20, Anderson's counsel moved for a trial continuance, noting, "The Defendant has waived speedy trial." On the same day, Anderson filed a signed waiver of the ninety-day speedy-trial right in rule 2.33(2)(b). The court granted the motion, and trial was rescheduled for April 2. On March 28, defense counsel filed another motion to continue. Again, the motion was granted. Trial was rescheduled for April 23. The order granting the motion noted that the defendant had waived speedy trial.

On April 22, defense counsel requested a continuance and listed the reason as "expert still preparing." That request was granted. On May 24, the parties jointly requested a continuance to pursue plea negotiations. Trial was reset for July 23. On July 19, the trial was continued again at the defense's request, listing "schedule expert" as the reason for delay. Trial was reset for July 30. On July 26, again at Anderson's request, the court granted a continuance and rescheduled the trial for August 20.

On August 1, defense counsel filed a second motion for psychiatric evaluation. A hearing was held and the State resisted the application for further psychiatric examination. On August 22, the court granted the defense's motion, entered a stay, and ordered another evaluation to determine Anderson's competency to stand trial.

At the State's request, the court set a probable-cause-to-show-competency hearing for April 18, 2014. Just prior to the April 18 hearing, defense counsel withdrew the motion for a determination of competency. On April 21, the court lifted the stay and set trial for June 24.

On May 30, after a pretrial conference, the court entered an order stating, "The court is advised that the trial date of June 24, 2014 is no longer appropriate." Counsel were directed to contact court administration to set a new trial date. An order was then entered on June 30, stating that "[p]er the order of May 30, 2014, this case is reset for trial on October 28, 2014." A court order on October 7 affirmed this trial date.

On October 24, defense counsel filed a motion to continue because he would be "undergoing knee surgery on October 30, 2014" and would be "unavailable for two weeks." That motion included this statement: "3. The Defendant has filed his Waiver of Speedy Trial (One Year Rule) for this case." The trial court granted the defendant's motion to continue and rescheduled the trial for December 9. The State then filed its only motion for a continuance because of the prosecutor's conflict with another felony case that had been pending trial for over thirty months. The court granted the State's motion and the trial was reset for and commenced on February 10, 2015. On February 17, the jury convicted Anderson of the charges.

On April 10, Anderson filed a motion to dismiss, asserting the State's failure to bring him to trial within one year required dismissal, pursuant to Iowa Rule of Criminal Procedure 2.33(2)(c). At the hearing, the State orally resisted

the motion but did not challenge its timeliness.  In a written ruling, the district court denied Anderson's motion, stating:

> The court hereby determines that the defendant waived his right to trial within 1 year by both a succession of motions for continuance and by erroneously advising the court that the defendant had waived his right to speedy trial within 1 year in the Motion to Continue filed on October 24, 2014.  Trial in this matter was continued on five occasions prior to the final determination that the defendant was competent to stand trial.  Four of those continuances were granted following defendant's Motion to Continue.  The fifth continuance was granted following a joint motion of the parties for a continuance.
>
> Following the defendant finally being found competent to stand trial, several trial dates were provided to the parties.  Either defendant's expert or defendant's counsel were unavailable for the first four of those dates provided.  Trial was therefore set upon the fifth such date.  That trial date was again continued upon defendant's request.  Defendant's actions in this matter constitute a waiver of his right to speedy trial pursuant to Rule 2.33(2)(c).
>
> The court further finds that delay in this matter should be attributable to the defendant.  All continuances with the exception of one were at the request of the defendant.  At *no* time did defendant request additional trial dates.  All continuances requested by the defendant were for good cause.  The State has carried its burden of proving all exceptions to the 1-year speedy trial deadline set forth in Rule 2.33(2)(c).  Defendant's motion should therefore be denied.

## II. Preservation of "Speedy Trial" Issue.[1]

On April 10, 2015, after the conclusion of his trial, Anderson filed his motion to dismiss raising the one-year speedy-trial issue.  At the hearing on the motion, the assistant county attorney stated:

> I'm not going to stand here and suggest that the one-year speedy trial requirement and the ability to file for a dismissal is waived if not raised before trial.  There are some old cases that would suggest that, but I think that's probably inconsistent with the ruling of the

---

[1] Anderson asserts that if this issue was not timely raised and therefore not properly preserved for appeal, he requests this court address it on appeal as an ineffective-assistance-of-counsel claim.  Because we find the issue may be addressed directly, we find no need to address it as such.

new cases.  But nobody had brought this up as an issue until the day of the first attempt at sentencing.[2]

The Iowa Supreme Court addressed the timing of a motion to dismiss based upon speedy-trial violation in *Paulsen*, stating, "We have said that a defendant can waive his right to a speedy trial if he raises the issue after a verdict has been returned *unless he is unrepresented by counsel and not admitted to bail during the course of the proceedings*."  265 N.W.2d at 585 (Iowa 1978) (emphasis added) (citation omitted).

A review of the record discloses that although Anderson was incarcerated the entire time the case was pending, he was also represented by counsel. Thus, under the case law, Anderson was obligated to file his motion to dismiss before trial or else waive his right to speedy trial.

However, in this case, the State not only did not raise the late filing as an issue, the assistant county attorney conceded—based upon his understanding of recent case law—that Anderson could file his motion after the trial.  The trial court set the motion for hearing, held the hearing, and ruled on the motion.  In the ruling, the court did not mention or rule on any timeliness issue.

> A motion not ruled on in the trial court, where there has been no request or demand for ruling, preserves no error. We would violate our function as a court of review if we were to pass upon the merits of a motion without at least a showing in the record that a trial court ruling was specifically requested, after which it failed or refused to rule.

---

[2] Upon our review, we do not find any cases that overrule *State v. Paulsen*, 265 N.W.2d 581, 585 (Iowa 1978).  However, as defendant points out in his brief, there are postconviction-relief cases that hold defense counsel is ineffective for not timely filing a motion to dismiss based upon violation of speedy trial.  See *Ennenga v. State*, 812 N.W.2d 696, 709 (Iowa 2012).

*State v. Schiernbeck*, 203 N.W.2d 546, 547 (Iowa 1973) (citation omitted). The same rule applies when there is no ruling on an issue within a motion. *State v. Manna*, 534 N.W.2d 642, 644 (Iowa 1995). Since the trial court did not rule on the timeliness issue, we are not at liberty in this appeal to address whether Anderson waived his right to speedy trial by filing his motion to dismiss after trial. We proceed to consider the trial court's ruling denying the motion.

**III. Standard of Review.**

"[T]he court's application of procedural rules governing speedy trial" is reviewed for correction of errors at law. *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001). In that regard, "[t]he trial court's findings of fact upon conflicting evidence are binding [on appeal] if supported by substantial evidence." *State v. Bond*, 340 N.W.2d 276, 279 (Iowa 1983). However, review of rulings determining the reason for delay is for abuse of discretion. When speedy-trial grounds are at issue in a motion to dismiss, the discretion given to the district court narrows. *State v. Winters*, 690 N.W.2d 903, 907–08 (Iowa 2005).

**IV. Analysis.**

**A. Speedy Trial.**

Speedy trial rights are guaranteed by the Iowa Constitution. Iowa Const. art. I, § 10. This right is implemented in Iowa Rule of Criminal Procedure 2.33(2)(c), which provides: "All criminal cases must be brought to trial within one year after the defendant's initial arraignment pursuant to rule 2.8 unless an extension is granted by the court, upon a showing of good cause." "[T]he State, not the defendant, has the responsibility for bringing the defendant to trial within the specified period." *State v. Phelps*, 379 N.W.2d 384, 387 (Iowa Ct. App.

1985). The defendant may affirmatively waive his right to speedy trial. *See* Iowa R. Crim. P. 2.33(2)(b) (providing the defendant has a right to a speedy trial if the defendant "has not waived" the right); *see also State v. Hinners*, 471 N.W.2d 841, 845–46 (Iowa 1991) (holding the district court did not err in overruling motion to dismiss on the single ground that defendant signed a written waiver of his speedy-trial right). The mere "failure of an accused to affirmatively assert his speedy trial rights does not amount to a waiver of those rights." *Ennenga*, 812 N.W.2d at 701.

"In applying this rule, we have recognized that, if trial does not commence within [the time set by the rule], the charge must be dismissed 'unless the State proves (1) defendant's waiver of speedy trial, (2) delay attributable to the defendant, or (3) 'good cause' for the delay.'" *State v. Campbell*, 714 N.W.2d 622, 627–28 (Iowa 2006) (citation omitted). "In determining whether there is good cause for a delay, we focus only on one factor, the reason for the delay." *Id.* at 628. "The attending circumstances bear on that inquiry only to the extent they relate to the sufficiency of the reason itself." *Id.*

Anderson argues that despite the continuances requested by him and the two periods where the case was stayed to have his competency to stand trial determined, he was not brought to trial within the one-year period prescribed in rule 2.33(2)(c). Specifically, Anderson contends that after the second stay was lifted, the court set the trial for June 24, 2014—by his calculation, the last trial date set within the one-year deadline. The court, on May 30, 2014, then entered an order stating the trial date was not available and ordered the parties to contact court administration to obtain a new trial date. Anderson argues there was no

basis for the court to cancel the June 24 trial date and order this continuance, it was not of Anderson's making or request, and it pushed the trial beyond the one-year deadline—even taking into consideration the defense motions to continue and the two separate stay periods. Therefore, Anderson contends the case had to be dismissed.

The State contends Anderson was timely brought to trial because good cause had been established for exceeding the one-year limit due to the continuances of the trial attributable to Anderson, the number of days the case was stayed for a competency determination calculated under Iowa Code section 812.4 (2013), and the defense attorney's erroneous representation to the court on October 24, 2014, that Anderson had signed a waiver of the one-year speedy trial requirement. Further, the State points out the June 24, 2014 continuance was necessary because the assigned judge was not available to preside over Anderson's trial as scheduled on that date.

The burden rests squarely on the State to prove the exception to the speedy-trial requirement. *State v. Miller*, 637 N.W.2d at 204. The State argues that the one-year speedy-trial deadline was not breached based upon three of the exceptions—waiver of speedy trial, delay attributable to the defendant, and "good cause" for the delay. We will consider each below.

**1. Delays Attributable to the Defendant.**

There are two forms of delay attributable to Anderson: the numerous motions for continuance and the two motions under Iowa Code chapter 812 to determine Anderson's competency to stand trial. Upon a defendant's 812 motion, once the court finds probable cause exists to sustain the defendant's

allegations he is not competent, the court is required to enter an order suspending (staying) further proceedings. Iowa Code § 812.3. The effect of the stay is set out in Iowa Code section 812.4, which states: "Pending the hearing, no further proceedings shall be taken under the complaint or indictment and the defendant's right to a speedy indictment and speedy trial shall be tolled until the court finds the defendant competent to stand trial." Both Anderson and the State compute the number of days tolled under section 812.4, but their calculations do not align.

Our review of the record shows the following. Arraignment was on September 13, 2012[3] and trial was set for November 6, 2012. The first order for a competency evaluation was on November 6, 2012, which stayed the proceedings. The period from September 13 to November 6 represents fifty-four days attributable to the one-year speedy-trial deadline. There were no continuances of the trial date during this period. The stay remained in effect until the order of February 19, 2013, lifting the stay. The ninety-one day stay is not included in the speedy trial calculation. Iowa Code § 812.4.

By order on August 22, 2013, the court granted the defendant's second chapter-812 request for a competency evaluation and stayed proceedings. Between February 19 and August 22, all trial dates were continued either at the defense's motion or, on one occasion, by a joint motion. The time from February 19 (fiftieth calendar day) to August 22 (235th calendar day) amounts to another 185 days toward the one-year speedy-trial deadline.

---

[3] The arraignment date initiates the one-year speedy-trial deadline in rule 2.33(2)(c).

The case remained stayed until the April 21, 2014 order lifting the stay and setting trial for June 24, 2014. Between August 22, 2013 and April 21, 2014 (112th calendar day), are another 242 days excluded by section 812.4 from the calculation of the one-year speedy-trial deadline. *Id.* Days attributable to the one-year deadline as of April 21, 2014 are 239 (54 + 185), leaving remaining 126 days (365 minus 239) available of the one-year period, which was until August 25, 2014 (112th day plus 126 days equals the 238th day of the year—August 25, 2014).

On June 2, 2014, the court entered an order that the June 24, 2014 trial date was "no longer appropriate." The order does not give a reason. In their arguments on the motion to dismiss, the parties agree that around this time, the district court adopted a new procedure by which judges were specifically assigned to cases, and Judge Harris was assigned to Anderson's trial. There is nothing in the record as to why Judge Harris was not available to hear the trial on June 24, 2014, which was still within the one-year speedy-trial deadline of August 25, 2014. The order directed the attorneys to obtain a new trial date from court administration.

At the hearing on the motion to dismiss, the State submitted two exhibits consisting of correspondence between the attorneys during this period in which they discussed trial dates. Defense counsel's letter of June 2, 2014 to the prosecutor indicates that the dates Judge Harris was available for trial were July 22, July 29, September 29, October 6, October 27, and November 7, 2014. As to the two dates mentioned for trial before the August 25, 2014 deadline—July 22 and 29—defense counsel advised that the defense expert witness was not

available. Defense counsel further advised that he was not available for trial on September 29. In his June 11, 2014 letter to the prosecutor, defense counsel explained that the reason he was not available on September 29 was due to a planned vacation to Ireland. Defense counsel suggested they agree on October 27, 2014 as the trial date.[4] This was conveyed to the court, and an order was entered on June 30, 2014, scheduling the trial for October 28, 2014.

The attorneys both operated under the assumption that because Judge Harris was specifically assigned to this case, they could only select trial dates available on his calendar. However, the trial dates before the August 25, 2014 one-year speedy-trial deadline available on the court's calendar were not acceptable to the defense because either the defense expert or defense counsel was not available.

Our supreme court has previously held, "[T]he general press of court business is insufficient to avoid dismissal under [our] speedy trial rule, even for the busy judge sitting in a high volume court." *Miller,* 637 N.W.2d at 205 (quoting *State v. Nelson*, 600 N.W.2d 598, 602 (Iowa 1999)). The supreme court also previously stated in *State v. Jennings*, 195 N.W.2d 351, 356 (Iowa 1972):

> This does not mean, however, particularly under existing judicial districting, chronic crowded dockets, sickness of a trial judge, or unavailability of judges due to vacation schedules will alone suffice as good cause for trial delay. The public policy inherent in [rule 2.33(2)] requires [speedy trial] absent good cause, and it is the State's duty to effectuate that policy.

---

[4] Defense counsel does not suggest the October 6, 2014 trial date, which would have been only one week after he was not available on September 29 due to the vacation in Ireland.

Our research has not uncovered any cases discussing speedy trial in relation to when a trial is specifically assigned to a particular judge, but *Jennings* and *Miller* appear to apply.

Regardless, the attorneys proceeded to determine a new trial date with the understanding Judge Harris had limited availability, both before and after the one-year speedy-trial deadline of August 25, 2014. It is unknown at this stage whether good cause would have prevented any other dates before August 25, 2014 from being used. It *is* known which of the available dates for trial, as set out in defense counsel's letters, were not acceptable to the defense due to conflicts with the defense expert and defense counsel, this being the reason why defense counsel suggested October 27, 2014 for trial.

In considering acquiescence, a panel of this court stated:

> Likewise, the mere acquiescence to a trial date beyond the speedy trial deadline, standing alone, is insufficient to constitute waiver. "[H]owever, . . . acquiescence in the setting of a trial date beyond the speedy trial period is a factor which may be considered in determining whether a defendant has waived his speedy trial rights."

*Adams v. State*, No. 13-0011, 2014 WL 1999294, at *3 (Iowa Ct. App. May 14, 2014) (citing *Phelps*, 379 N.W.2d at 387) (alteration in original) (citation omitted).

The impact of acquiescence has also been addressed by our supreme court:

> In [*State v.*] *Zaehringer*, [306 N.W.2d 792, 795–96 (Iowa 1981),] we found waiver when the defendant not only failed to assert speedy trial rights but actively engaged in extensive use of the entire schedule set by the court, including numerous motions filed after the expiration of the speedy trial deadline. We concluded that under the circumstances, the defendant "actively participated in the events which delayed his retrial but later sought to take advantage of that delay to terminate the prosecution."

*State v. Taylor*, 881 N.W.2d 72, 77–78 (Iowa 2016) (citations omitted). In the present case, defense counsel did not just acquiesce to the October 28, 2014 trial date, but suggested it to the prosecution as the next available date (and first available date after the one-year speedy-trial deadline) and now seeks to take advantage of the delay. This is not permitted under *Zaehringer*. Up to the October 28, 2014 trial date, the delay was caused or attributable to the defendant, and there was no basis for a dismissal based upon the one-year speedy-trial rule in 2.33(2)(c).

**2. Waiver.**

On October 24, 2014, defense counsel filed a motion to continue the October 28 trial because he would be "undergoing knee surgery on October 30, 2014" and would be "unavailable for two weeks." That motion included this statement: "3. The Defendant has filed his Waiver of Speedy Trial (One Year Rule) for this case." The trial court granted the defendant's motion to continue and rescheduled the trial for December 9, 2014. Such continuance was upon defense counsel's request and constituted good cause to continue the trial.

The defendant did not actually sign or file a written waiver of his one-year speedy-trial right. Nor did his attorney file such a waiver on Anderson's behalf. Rather, defense counsel stated in his motion to continue the October 28, 2014 trial date that such a waiver had been filed. As noted by the trial court in its ruling on the motion to dismiss:

> The court hereby determines that the defendant waived his right to trial within 1 year by both a succession of motions for continuance *and by erroneously advising the court that the defendant had waived his right to speedy trial within 1 year in the Motion to Continue filed on October 24, 2014.*

(Emphasis added.)  It is therefore obvious the court was aware of the erroneous representation prior to its ruling.  We further note that defense counsel had the authority to waive Anderson's one-year speedy trial right.

> We therefore hold that the statutory right to a speedy trial under rule [2.33(2)] is not a personal right that can be waived only by the defendant.  Defense counsel acting within the scope of his or her authority may waive this right on the defendant's behalf without the defendant's express consent.  In the present case defense counsel expressly waived defendant's right to a speedy trial; counsel also waived this right by the succession of continuance motions.  Defense counsel's action was within the scope of his authority, and the delay caused thereby was in no way attributable to the State.

*State v. LeFlore*, 308 N.W.2d 39, 41 (Iowa 1981).  Here, the trial court relied on defense counsel's statement the one-year speedy-trial requirement had been waived when ruling on both the October 28 trial continuance as well as the State's motion to continue the December 9 trial date.  This constituted good cause for not bringing Anderson to trial at the earliest possible trial date after October 28, 2014.

On November 26, 2014, defense counsel filed a motion for scheduling conference regarding the December 9 trial date.  In the motion, he stated the prosecutor had informed the defense that the prosecutor intended to file a motion to continue the December 9, 2014 trial date.  The motion further stated that defense counsel informed the prosecutor that defense counsel would resist the motion.  The record does not contain the State's motion to continue.  It is unclear whether a hearing was held.  On December 19, 2014, the court filed an order which set a pre-trial conference and motion in limine for hearing on January 26, 2015 and trial for February 10, 2015.  At the hearing on the motion to dismiss

held after the trial, the prosecutor set out that he had informed both defense counsel and the court before the December 9, 2014 trial date was set that the prosecutor was not available on that date due a trial conflict—another felony case that had been pending trial for over thirty months.

The question here is whether a prosecutor's trial conflict with another trial constituted good cause for continuance of Anderson's trial. This has not been directly addressed in Iowa. Courts in other states have held that a prosecutor's trial conflict may constitute good cause for a continuance even when the defendant's speedy-trial rights are impacted. *See e.g.*, *Hicks v. State*, No. 741, 2010, 2011 WL 2937393, at *2–3 (Del. July 21, 2011); *Choate v. State*, 75 A.3d 1003, 1015 (Md. 2013); *State v. Toney*, 553 A.2d 696, 703 (Md. 1989); *State v. Pedockie*, 95 P.3d 1182 (Utah 2004); *State v. Flinn,* 110 P.3d 748, 751 (Wash. 2005) (stating scheduling conflicts may justify a continuance beyond speedy-trial expiration date); *State v. Williams,* 17 P.3d 648, 652 (Wash. Ct. App. 2001) (stating prosecutor's scheduling conflicts may constitute unforeseen or unavoidable circumstances warranting trial extension under speedy-trial rules).

The court cannot accept every claimed conflict as good cause but must determine on a case-by-case basis whether the prosecutor's conflict cannot be avoided, for example because the nature and complexity of the conflicting trial prevents another prosecutor from assuming responsibility. In this case, the prosecutor explained that he was directly involved in the preparation of expert witnesses in the conflicting case. These facts warrant a finding that the prosecutor's trial conflict constituted good cause, especially when combined with

the court already having been informed that the defendant had waived his one-year speedy-trial right.

Based upon our analysis, we find the trial court did not abuse its discretion in finding waiver, delay attributable to the defendant, and good cause for the delay. The trial court properly denied Anderson's motion to dismiss.

**B. Ineffective Assistance: Jury Instructions and Verdict Forms.**

We review ineffective-assistance-of-counsel claims de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). This is because such claims are grounded in the Sixth Amendment to the United States Constitution. *Id.* In a criminal case, a defendant may raise such a claim on direct appeal if he or she has "reasonable grounds to believe that the record is adequate to address the claim on direct appeal." Iowa Code § 814.7(2). "We will resolve the claims on direct appeal only when the record is adequate." *Clay,* 824 N.W.2d at 494.

To succeed on a claim of ineffective assistance of counsel, Anderson must establish by a preponderance of the evidence: "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Adams,* 810 N.W.2d 365, 372 (Iowa 2012) (citation omitted). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, reversal is warranted only where a claimant makes a showing of both of these elements. *Simmons v. State Pub. Def.,* 791 N.W.2d 69, 75–76 (Iowa 2010). If we conclude a defendant has failed to establish either of these elements, we need not address the remaining element. *See Clay,* 824 N.W.2d at 501 n.2 ("The court always has

the option to decide the claim on the prejudice prong of the *Strickland* test, without deciding whether the attorney performed deficiently."). Under the first prong, "we measure counsel's performance against the standard of a reasonably competent practitioner." *Id.* at 495 (citation omitted). It is presumed the attorney performed his or her duties competently, and the claimant must successfully rebut this presumption by establishing by a preponderance of the evidence that counsel failed to perform an essential duty. *Id.* We assess counsel's performance "objectively by determining whether [it] was reasonable, under prevailing professional norms, considering all the circumstances." *State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015) (alteration in original).

On appeal, Anderson claims his trial counsel was ineffective for failing to object to several jury instructions and the verdict forms. Each instruction and verdict form will be considered separately.

### 1. Instruction No. 21: Intoxication.[5]

Anderson argues that the jury instruction on intoxication—the uniform jury instruction—misstates the law by stating in the second sentence: "The fact that a person is under the influence of intoxicants or drugs does not excuse nor aggravate his guilt." The Iowa Code states that intoxication "neither excuses the person's act nor aggravates the person's guilt." Iowa Code § 701.5.

"Trial courts have a rather broad discretion in the language that may be chosen to convey a particular idea to the jury. Unless the choice of words results in an incorrect statement of law or omits a matter essential for the jury's

---

[5] Appellate counsel raises the challenge to the intoxication instruction. Anderson's pro se brief raises the challenges to the remaining instructions and verdict form.

consideration, no error results." *Stringer v. State*, 522 N.W.2d 797, 800 (Iowa 1994). "The court may phrase the instructions in its own words as long as the instructions given fully and fairly advise the jury of the issues it is to decide and the law which is applicable." *State v. Liggins*, 557 N.W.2d 263, 267 (Iowa 1996).

The intoxication jury instruction given here matches the Iowa State Bar Association's (ISBA) model instruction. Iowa Crim. Jury Instr. 200.14. Generally, Iowa appellate courts have been "reluctant to disapprove uniform instructions." *See State v. Weaver*, 405 N.W.2d 852, 855 (Iowa 1987) (citing *State v. Jeffries*, 313 N.W.2d 508, 509 (Iowa 1981)). Further, the second paragraph of the intoxication instruction uses the word "act" in setting out the functional parameters of the intoxication defense. This second paragraph correctly defines the law surrounding the intoxication defense. *See State v. Marin*, 788 N.W.2d 833, 838 (Iowa 2010) (rejecting challenge to use of ISBA model instruction on intoxication because that stock instruction "informed the jury it could use Marin's intoxication, whether voluntary or involuntary, to negate the state of mind necessary to be convicted"). As this second paragraph sets out the analytical framework for the jury in applying the law and is a correct statement of the law, the instruction is correct and defense counsel was not ineffective for not objecting. *See State v. Graves*, 668 N.W.2d 860, 881 (Iowa 2003) ("Trial counsel has no duty to raise an issue that has no merit.").

Even if this jury instruction was incorrect, Anderson suffered no prejudice. At trial, the defense's intoxication expert admitted that Anderson, despite his intoxication, was capable of forming a specific intent before/while pulling the

trigger. Under this evidence, it is unlikely the intoxication instruction as worded influenced the guilty verdict.

### 2. Instruction No. 22: Assault.

Anderson argues that his trial counsel was ineffective for not objecting to the instruction defining "assault" because "it did not require the jury to find an *intentional* assault as an element of the offense of Willful Injury." This argument ignores the marshalling instruction defining the elements of willful injury, which required the jury to find that "[t]he defendant *specifically intended* to cause a serious injury to Maurice Stovall" in order to find him guilty. When we review jury instruction, we consider them as a whole. *See State v. Fintel*, 689 N.W.2d 95, 104 (Iowa 2004) ("Jury instructions are not considered separately; they should be considered as a whole.").

The assault instruction provided a general definition of assault. Assault was not only an element of willful injury but was a lesser-included offense of attempt to commit murder (Count 1) and willful injury causing bodily injury (Count 2). It had to be read in conjunction with other instructions. In isolation, it is a correct statement of the law. The verdict indicates the jury found that the specific-intent element for willful injury had been proven beyond a reasonable doubt. Defense counsel had no duty to object to the assault instruction as given and therefore was not ineffective. Since the assault instruction was proper, Anderson suffered no prejudice from his trial counsel's failure to object.

### 3. Instruction No. 34: Going Armed with Intent.

Anderson argues that counsel should have objected to the instruction defining this offense because it "failed to require that the jury find proof of

movement—and that the intent must be present at the time the accused arms himself." The instruction uses the word "went" instead of the word "going," since it is the past tense of the word "go." *Went*, *The American Heritage Dictionary* (2d college ed. 1982). The word implies movement. The instruction also refers to the specific intent required at the moment when the defendant "was armed." As there was no error in the instruction, Anderson's trial counsel had no basis to object and therefore was not ineffective. *See Graves*, 668 N.W.2d at 881.

In any event, even if this instruction were deficient, any deficiency was non-prejudicial for two reasons. First, it was uncontested at trial that Anderson chased the victim (Stovall) through the bar and out into the street, fired his gun as he ran, and dropped it when subdued by an officer—uncontested proof of movement and contemporaneous intent. "Based upon the evidence and testimony at trial, there is no reasonable probability the jury would have found the movement element to be lacking." *State v. Demery*, No. 10–1158, 2011 WL 3925714, at *9 (Iowa Ct. App. Sept. 8, 2011); *see also State v. Harris*, No. 15–0940, 2016 WL 1358653, at *2–3 (Iowa Ct. App. Apr. 6, 2016). Second, at sentencing Anderson's conviction on this count merged with his conviction for intimidation with a dangerous weapon; thus, there was no prejudice.

**4. Instruction No. 31: Intimidation with a Dangerous Weapon with Intent.**

Anderson argues counsel should have objected to this instruction because it required the State to prove "[p]ersons actually experienced fear of serious injury," whereas Iowa Code section 708.6 requires the State to prove people were placed in "reasonable apprehension of serious injury." Specifically,

Anderson complains the words "reasonable apprehension" in the statute should not be replaced in the jury instruction by "actually experienced fear."

Under this section, the state of mind of both the actor and the victim are elements. *State v. White*, 319 N.W.2d 213, 215 (Iowa 1982). "The actor must intend to injure or to provoke fear or anger in another." *Id.* Also, the victim must experience apprehension of serious injury. *Id.* It is not sufficient to present evidence a reasonable person in the position of the victim would have been frightened. *Id.* at 216. There must be evidence of the "actual effect of the shooting on this particular victim." *Id.; see also In re N.W.E.,* 564 N.W.2d 451, 454 (Iowa Ct. App. 1997) (noting the State must prove the victim actually experienced fear of serious injury from the defendant's act).

As can be seen, our supreme court has interpreted the statute to require that the State must prove the victim actually experienced fear of serious injury to fulfill the apprehension requirement. *See White*, 319 N.W.2d at 215. The instruction mirrors this holding in *White* and is therefore a correct statement of the law. Anderson's trial counsel was not ineffective for failing to object to this instruction.

**5. Instruction Nos. 18 and 19: General/Specific Intent**

Anderson concedes that instruction number eighteen on "general intent" and instruction number nineteen on "specific intent" were correct statements of the law. He argues, however, these two instructions should not have been submitted to the jury in tandem because the jury "received no guidance as to *how* or *where* either intent instruction applied."

The jury was required to consider both specific-intent crimes (attempt to commit murder, going armed with intent) and a general-intent crime (possession of a firearm by a felon). Thus, the trial court was obligated to give both a general-intent and specific-intent instruction.

As noted above, when reviewing jury instructions, we consider them as a whole, not separately. *See Fintel*, 689 N.W.2d at 104. The term "specific intent" is used where applicable in the instructions that concern specific-intent crimes. Moreover, as defense counsel noted in an objection to the omission of the term "general intent" from instruction number eighteen, the jury needed a general-intent instruction in order to apply mens rea requirements for crimes charged *without* a specific intent element—i.e., possession of a firearm as a felon. Although it may have been clearer to specify which crimes called for general versus specific intent, the instructions were a correct statement of the law and when read as a whole were appropriate. Again, since there was no error, Anderson's trial counsel was not ineffective for failing to object on the basis now urged by Anderson.

**6. Jury Verdict Forms.**

Anderson argues his trial counsel should have requested verdict forms that would have allowed the jury to find him "not guilty by reason of diminished responsibility," as provided by Iowa Rule of Criminal Procedure 2.22(8). Special verdict forms are not intended as a procedural protection for defendants—rather, they exist to enable the court to order involuntary commitment for evaluation and to conduct further inquiry into "whether the defendant is mentally ill and

dangerous to the defendant's self or to others" as a result of the mental condition that caused him to commit the crime. *See* Iowa R. Crim. P. 2.22(8)(b).

Here, even though the jury was instructed on the principles of diminished responsibility, it was based on the defense theory of intoxication and Anderson's ability to form specific intent. Providing a verdict form allowing the jury to find him not guilty by reason of diminished responsibility was unnecessary where the primary defense was intoxication and the defendant was no longer dangerous because he was no longer intoxicated. The verdict option Anderson proposes would serve no purpose. Accordingly, rule 2.22(8) is not automatically triggered by use of an intoxication defense.

Further, the jury was properly instructed on how to apply the intoxication defense, and it could have returned a "not guilty" verdict on any charge that required proof of specific intent if it had found that the State failed to meet its burden to overcome the intoxication defense. "Consequently, even had the verdict form been given to the jury, it would not have been used." *State v. Stewart*, 445 N.W.2d 418, 422 (Iowa Ct. App. 1989). Under the instructions as given, if the jury had found Anderson had diminished responsibility due to intoxication, it would have returned a verdict of not guilty, and that would have been more favorable than a verdict of not guilty by reason of diminished responsibility, following which Anderson potentially would have been committed for evaluation under rule 2.22(8)(b). Since the jury found Anderson guilty, it may be concluded that it rejected his intoxication defense and similarly would have rejected the diminished-responsibility defense. Anderson cannot demonstrate prejudice and his ineffective-assistance claim fails.

**7. Structural Error.**

In his pro se brief, Anderson claims his convictions should be reversed due to "structural error" by his trial counsel. This unique appeal point has been discussed by our supreme court in *Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011):

> Structural errors are not merely errors in a legal proceeding, but errors "affecting the framework within which the trial proceeds." We have recognized structural error occurs when: (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as where counsel has an actual conflict of interest in jointly representing multiple defendants.
>
> Under these circumstances, "[n]o specific showing of prejudice [is] required" as the criminal adversary process itself is "presumptively unreliable." Stated another way, when counsel commits a structural error, the defendant does not have to show he would have obtained a different outcome absent the counsel's structural error because such an analysis "would be a speculative inquiry into what might have occurred in an alternate universe." In cases where defense counsel fails to file an appeal against the defendant's wishes, the Court has determined the "serious denial of the entire judicial proceeding itself . . . similarly demands a presumption of prejudice." In sum, when a structural error occurs in a proceeding, the underlying criminal proceeding is so unreliable the constitutional or statutory right to counsel entitles the defendant to a new proceeding without the need to show the error actually caused prejudice.

(Citations omitted.) After a review of the record in this case, we find that Anderson has not established any of the required criteria for structural error. As noted above, his arguments concerning alleged errors committed by his trial counsel are found to have no merit.

**C. Sentencing.**

"Appellate review of the district court's sentencing decision is for an abuse of discretion." *State v. Evans*, 672 N.W.2d 328, 331–32 (Iowa 2003). "Sentencing decisions of the district court are cloaked with a strong presumption in their favor." *State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996). "An abuse of discretion is found only when the sentencing court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

Anderson challenges the trial court's imposition of consecutive sentences based upon the following comments made by the court at sentencing:

> Mr. Anderson, the—the reason that's being run consecutive which is the issue in this case is *I think everyone is well aware of the gun violence problem that we have here. There are people on both sides of that who believe that we should restrict firearms and those who think we should not. One thing that those two groups agree on is that the people who have firearms should be people who are responsible and who are not felons. And it is one of the few things that we agree on, and simply, sir, you—you don't fit either one of those. You are irresponsible with a firearm, and you are a convicted felon. This is the one area in which we can—we can try to take a stand on the improper and illegal use of firearms, and—and that's what's being done here.*
> I understand that this is a long sentence. It is 17 years, 17 and a half years that you'll have to serve. I don't know how the parole board will—will handle this. It is—it is my understanding that they will treat this as a 30-year sentence, that you'll have to serve the 17 and a half, and Mr. Jacobsen is probably correct that it won't make any difference in how long you actually serve. Mr. Frerichs may be correct. That's up to the parole board. That's not up— that's not up to the court. But in either regard, you were convicted. You weren't supposed to have a gun, and you had one, and that's why the court has run that consecutive.

(Emphasis added.) Anderson argues "the court's concerns with how activists involved in the debate on gun restrictions view the suitability of Anderson's

sentence or whether they agree that felons should not possess weapons are not proper considerations when sentencing a defendant."

When imposing sentence, the court owes a duty to both the defendant and the public. *State v. Fink*, 320 N.W.2d 632, 634 (Iowa Ct. App. 1982). After considering all pertinent sentencing factors, the court must select the sentencing option that would best accomplish justice for both society and the individual defendant. *Id.* The punishment selected by the court should fit both the crime and the individual. *State v. Hildebrand*, 280 N.W.2d 393, 396 (Iowa 1979). The trial court must exercise its discretion. *Id.* To ensure that the appellate court can review the sentencing court's decision and determine whether the court exercised its discretion, the sentencing court must state on the record its reasons for imposing a particular sentence. Iowa R. Crim. P. 2.23(3)(d); *State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000). The court may not base its decision on one factor alone. *Hildebrand*, 280 N.W.2d at 396. The "minimal essential factors" that must be considered and weighed by the sentencing court include the nature of the offense; the attending circumstances; the defendant's age, character, propensities, and chances of reform. *Id.*; *see* Iowa Code § 907.5.

The imposition of consecutive sentences is a two-step process. First, the court may impose consecutive sentences when the offenses are separate and distinct. *State v. Criswell*, 242 N.W.2d 259, 260 (Iowa 1976); *see also* Iowa Code § 901.8. Second, in addition to determining that separate and distinct offenses are present, the district court must provide specific reasoning for why consecutive sentences are warranted in a particular case. *Jacobs*, 607 N.W.2d at 690.

Here, the claimed offensive comment is not improper. The court noted the current public debate, but it did not indicate it was taking sides on that debate or relying on it in imposing sentence. Rather, the court commented that both sides agree that previously convicted felons who are not responsible with firearms should not possess them. This was nothing more than recognizing that our legislature, which represents public sentiment in enacting law, has passed such a law and that Anderson was convicted by the jury of violating that law. The sentencing court did not use an improper factor in imposing consecutive sentences. There is no reason to set aside the sentences.

**V. Conclusion.**

We have considered all of Anderson's contentions in this appeal, and resolving them against him, we find the convictions and sentences should be affirmed.

**AFFIRMED.**